(94 South. 386)

No. 24474.

## MILTON et al. v. LINCOLN PARISH SCHOOL BOARD.

(Oct. 30, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Schools and school districts** &#9737;&#8658;97(1)—**Legally created authorized to issue bonds and levy tax to build schoolhouse on vote of taxpayers in favor thereof.**

Const. 1913, art. 281, authorizing districts to incur indebtedness, issue bonds therefor, and levy a tax to retire the same, whenever authorized to by a majority of the taxpayers voting to build a schoolhouse, the title to which shall vest in the district, is sufficiently broad in its terms to authorize a district to issue bonds and levy a tax to build a schoolhouse when au-

thorized by an election held for that purpose, provided the district was legally created.

2. **Constitutional law** &#9737;&#8658;46(2)—**When constitutionality of statute not attacked in petition, it cannot be passed on.**

Where plaintiffs, suing to annul the creation of a school district and an election therein on the question of issuing bonds, though attacking the legality of the creation of the district, did not allege the unconstitutionality of Act No. 120 of 1916, § 14, under which it was created, its constitutionality cannot be passed on in the Supreme Court, but must be assumed.

3. **Schools and school districts** &#9737;&#8658;24(2)—**Burden on one alleging district illegally created to prove it.**

Where plaintiffs, suing for the annulment of a school district as illegally created, recognized that it was created, though illegally, the burden was on them to allege and prove that it was illegally created.

4. **Evidence** &#9737;&#8658;383(3)—**Minutes of proceedings of school board as published in newspaper held not sufficient proof of place of meeting.**

The minutes of the proceedings of a parish school board as published in a newspaper were not sufficient proof that the meeting was held at the place therein stated, rather than the parish seat, where it did not appear by what authority they were published or that the paper was the official journal, and they were admitted over the objection of the party subsequently relying thereon for a limited purpose only.

5. **Schools and school districts** &#9737;&#8658;97(4)—**When district in two parishes, voters could not vote at bond election outside their parish.**

Under Const. 1913, art. 197, § 1, and article 199, requiring an elector to have been a resident of the parish for one year, and of the precinct for six months, where there was only one voting precinct in a school district embracing territory lying in two parishes, and voters from one parish went to the precinct in the other parish and voted at a bond election, their votes were improperly counted.

Appeal from Fourth Judicial District Court, Parish of Lincoln; J. B. Crow, Judge.

Suit by E. B. Milton and others against the Lincoln Parish School Board. From an adverse judgment, plaintiffs appeal. Judgment rendered in favor of plaintiffs.

S. D. Pearce, of Ruston, and Samuel Barksdale, of Arcadia, for appellants.

Goff & Barnette, of Arcadia, for appellee.

By the WHOLE COURT.

OVERTON, J.. The Lincoln Parish school board ordered an election to be held on June 1, 1920, in the Oak Grove subschool district No. 4 of the parish of Lincoln, on the proposition to incur debt and issue negotiable bonds therefor, to build a schoolhouse. The election was held, and the school board met on the following day, and after canvassing the returns and counting the ballots declared the result to be 30 votes and a property valuation of $57,005 for the proposition, and 27 votes and a property valuation of $50,195 against it.

Considerable dissatisfaction appears to have arisen, not only because of the result of the election, but also because of the creation of the district itself. Hence this suit followed, attacking the election and the creation of the district itself, and praying for the annulment of both.

The district was created out of territory lying in the parishes of Lincoln and Bienville, under sections 13 and 14 of Act 120 of 1916, which read:

"Sec. 13. Be it * * * enacted, etc., that the parish school board for the purpose of school attendance may divide the parish into school districts of such proper and convenient area and shape as will best accommodate the children of the parish, provided that the board may, if it thinks proper, permit children to attend schools out of their district.

"Sec. 14. Be it further enacted, etc., that the parish school boards of two adjoining parishes, where the division line intersects a neighborhood whose convenience requires it, may lay off a district composed of part of both parishes. Such districts shall be reported by the superintendent, together with a census of the school children only as belonging to the parish in which the schoolhouse may be situated, and reports shall be made by the parish superintendent as though the district lay entirely in such parish."

Article 281 of the Constitution of 1913 authorizes school districts to incur indebtedness and issue negotiable bonds therefor, and to levy a tax to retire the same, whenever authorized so to do, by a majority of the qualified taxpayers in number and amount, voting at an election held for that purpose, to build a schoolhouse, the title to which shall vest in the district, such being the purpose of the proposed bond issue.

[1, 2] This cited article is sufficiently broad in its terms to authorize the school district created in this instance to issue the bonds and levy the tax, provided it was legally created, and section 14 of the act under which it was created is not unconstitutional. Plaintiffs in their brief express doubts as to the constitutionality of the section, but though they had ample opportunity in their petition, while attacking the legality of the creation of the district, to have alleged the unconstitutionality of the section, yet they did not do so, and not having done so, its constitutionality cannot now be passed upon in this court, but must be assumed. Murphy v. St. Mary's Parish, 118 La. 401, 42 South. 979; Saint v. Martel, 127 La. 73, 53 South. 432; Britt v. Caldwell-Norton Lumber Co., 129 La. 243, 55 South. 778.

[3, 4] Plaintiffs, however, contend that the district was created by the Lincoln parish school board alone, and that it was essential to its creation that the school boards of both parishes should have acted jointly in its creation; that the only action of the Bienville board in the matter was the attempted confirmation of the action of the Lincoln board; that mere confirmation was not sufficient; that joint action was required, but that if it were sufficient, then that the act of confirmation is null, because it was adopted at Ringgold, in Bienville parish, instead of at Arcadia, the parish seat. It is needless, however, for us to pass on these questions for the reason that the necessary evi-

dence is in reality not before us. Plaintiffs contend that the burden was on defendant to show that the district was legally created, but we think not. As plaintiffs recognized that it was created, though illegally, and prayed for its annulment, the burden was on them to allege and prove the illegality of its creation. The case of Hemler v. Richland Parish School Board, 142 La. 135, 76 South. 585, is not applicable to the question here raised. In that case it appeared that the school board had called an election to authorize the levy of a tax and the issuance of bonds in the Second ward of the parish. The court found that the Second ward was nothing but a police jury ward, and naturally stated that, in the event the ward was a school district, the burden was on the board to show that fact. In this case, however, the election was not called to be held in a ward, but in a school district, and this plaintiffs' petition admits. As it is, the only evidence before us, touching the point in question, is a copy of the Bienville Democrat, containing a publication of what purports to be the minutes of the proceedings of the Bienville parish school board, at a meeting held at Ringgold, at which that board passed an ordinance concurring in the action of the Lincoln board, and reciting the ordinance itself. All that is proved in relation to the paper or the publication is that it is a copy of the Bienville Democrat, a newspaper published in Arcadia, Bienville parish, on October 16, 1919. It does not appear by what authority the publication of the minutes was made, or even whether the paper was the official journal. Plaintiffs, who now rely on the offering in part, objected to it when made, and the court admitted it for the "limited purpose of showing publication of the alleged proceedings of the school board of Bienville parish." Defendant is not complaining of the ruling. Under all of the circumstances, it is clear that we are unable to accept the evidence as proof of the asserted fact that the meeting was held at Ringgold.

[5] Having failed to find sufficient reason alleged and proved to annul the creation of the district, we are next called upon to determine the validity of the election at which the bonds were authorized. There are many grounds alleged for annulling it, but only one of which it is necessary to mention. It appears that there was only one voting precinct in the district, and that was in the parish of Lincoln. Five voters from Bienville parish went to the precinct in Lincoln parish, and voted there. Their votes were not discarded, but counted. Only one of them, R. S. Canterberry, voted against the proposition. He voted a property valuation of $2,157. The remainder voted for it, voting a total property valuation of $8,195. These votes should not have been counted, since they were cast outside of the parish in which the voters resided and were registered.

The Constitution of 1913, under which the election was held, fixed the qualifications of voters in such an election. Article 199 thereof, in so far as it is pertinent, reads:

"Upon all questions submitted to the taxpayers, as such, of any municipal or other political subdivision of the state, the qualifications of such taxpayers, as voters, shall be those of age and residence prescribed by this Constitution. * * * "

Section 1 of article 197 of that instrument, which is the only section necessary to quote, in fixing the qualifications of an elector, reads:

"Section 1. He shall have been an actual bona fide resident of this state for two years, of the parish one year, and of the precinct in which he offers to vote six months next preceding the election; provided, that removal from one precinct to another in the same parish shall not operate to deprive any person of the right to vote in the precinct from which he has removed, until six months after such removal."

In the above article, the precinct that is manifestly intended is a precinct of the

parish, and the precinct of another parish is excluded. Therefore, as the five property taxpayers were not residents of the parish in which they voted, though residents of the school district, their votes should not have been counted. Deducting the vote of Canterberry from the 27 votes against the proposition, there remain 26 votes against it. The four remaining votes to be deducted, as we have seen, were cast for the proposition, and, therefore, deducting them from the 30 votes for it, leaves 26. Deducting the property .valuation of Canterberry, which amounted to $2,125, voted against the proposition, leaves $49,020, in property valuation against it. Deducting the total property valuation of the four votes cast for the proposition, which valuation amounts to $8,195 from the $57,505 cast for it, leaves $49,310. There is, however, another amount to be deducted from the valuation in favor of the proposition. That amount is $1,497.60, which is included in the valuation voted by C. E. Daniel, who voted for the proposition, and which it is admitted should be deducted. Deducting it, there remains in favor of the proposition, $47,822.40. Hence the proposition was defeated, as it failed to carry by a majority in number and amount.

Defendant averred in its answer that there were votes cast in favor of the proposition which were not counted, but should have been. While the evidence shows that some were deemed illegal, and therefore thrown out, yet it completely fails to show that there was error in this respect, and, in fact, the refusal of the authorities to count them is ·not discussed in defendant's brief.

For the reasons assigned, it is ordered, adjudged, and decreed that said election be, and the same is hereby, annulled, and that such rights, as plaintiffs may have to sue to annul the creation of said district, be reserved them; defendant to pay the costs of this suit in both courts.