O-’NIELL, C. J.
(dissenting). The court’s ruling in this case is confined to the effect of the 60 days’ prescription, or limitation. There is no ruling on the question whether the Act 152 of 1920 is violative of those provisions of the state Constitution which seem opposed to the idea that the Legislature may extend the jurisdiction of a parish school board-, or of a parish school superintendent, beyond the territorial limits of the parish. Therefore I shall not express an opinion as to whether the statute is violative of the state Constitution.
The majority opinion, from which I dissent, maintains that the Constitution of 1921 (article 14, § 14, par. n) purports to validate, by the prescription or limitation of 60 days, taxes levied and bonds issued in violation of the Constitution itself. Such a provision in a Constitution would seem to me anomalous; and it seems to have been sedulously avoided by the language used in paragraph p of section 14 of article 14. What the paragraph says is that, after 60 days from the date of promulgation of the result of any election “held under the provisions of this section,” there shall be no right or cause of action, on the part of any one, to contest the regularity, formality, legality of the election, or tax provision, or bond authorization. I do not believe that the word “constitutionality” was forgotten by the authors of this paragraph, when they were using such words as “regularity,” “formality," “legality,” “validity.” There is no reason to doubt that the omission of the word constitutionality was deliberate.
The interpretation which the court is now giving to the Act 152 of 1920 makes it violate the due process clause and the equal protection clause of the Fourteenth Amendment
When a state court of last resort construes a statute so as to permit a violation of the due process clause, or of the equal protection clause,, of the Fourteenth Amendment, the Supreme Court of the United States will adjudge the statute unconstitutional, even *340 though, under a proper construction, the statute would be valid. In Truax v. Corrigan, 257 U. S. 312, 42 Sup. Ct. 124, 66 L. Ed. 254, a statute of Arizona (section 1464, Rev. Stat. of 1913) was adjudged invalid because the Supreme Court of that state construed the statute so that, in the opinion of the Supreme Court of the United States, it worked a denial of the equal protection of the law; even though ttye statute was copied from a federal statute (section 20 of the Clayton Act, 38 Stat. at L. 738, c. 323; U. S. Comp. Stat. § 1243d; 6 Fed. Stat. Anno [2d Ed.] p. 141) which, under a proper construction, was declared valid.
According to section 14 of article 14 of the Constitution, the school board, in order to issue the bonds and levy the tax, had to be authorized “by a vote of a majority, in number and amount, of the property taxpayers qualified to vote under the Constitution and laws of this state,” voting at an election called for that purpose, throughout the whole school district.
The school board of Evangeline parish called the election ostensibly for the taxpayers throughout the whole district — for those residing in Acadia parish as well as for those residing in Evangeline parish — although the proceeds of the bonds to be issued and of the tax to be levied were to be appropriated entirely to the building of a schoolhouse in Evangeline parish. A voting precinct was established in Evangeline parish, so that the taxpayers residing in that parish could vote for or against the proposition; but the taxpayers residing in Acadia parish were not allowed to vote. There was no voting precinct in that part of the school district which is in the parish of Acadia; and the taxpayers residing in that parish, of course, were forbidden by the Constitution to vote outside of the parish. Section 3 of article 8 of the Constitution declares—and section 13 of Act 46 of 1921 (page 52) repeats—that, in an election called for the taxpayers of any subdivision of the state to vote on a proposition to incur a debt, to issue bonds, or to levy a tax, the qualifications of the taxpayers to vote shall be the same, as to age, residence, poll tax payments, and registration, as the qualifications prescribed for electors to vote in a general election. And paragraph (a) of section 1 of the same article of the Constitution requires that, to be an elector, a citizen must have been an actual bona fide resident “of the precinct, in which he offers to vote, three months next preceding the election,” and must have been an actual bona fide resident of the parish for a year.
It is conceded, in the majority opinion, that this is a case of taxation without representation. The court now affirms the doctrine announced in Milton v. Lincoln Parish School Board, 152 La. 761, 94 South. 386, which I approve, viz.:
“Under Const. 1913, art. 197, § 1, and article 199, requiring an elector to have been a resident of the parish for one year, and'of the precinct for six months, where there was only one voting precinct in a school district embracing territory lying in two parishes, and voters from one parish went to the precinct in the other parish and votect at a bond election, their votes were improperly counted.”
Therefore, in this case, if the taxpayers residing in that part of the school district that is in Acadia parish had gone and voted at the voting precinct in Evangeline parish—which was the only voting precinct provided for the election—their votes would not have been counted.
It is therefore conceded that the privilege of voting on the proposition to incur the debt of $50,000 and to issue the bonds, to be paid by a special tax on all taxable property in the school district, was afforded to the taxpayers residing in that part of the district that is in Evangeline parish, but was denied the taxpayers residing in that part of the district that is in Acadia parish.
*342 In lieu of the privilege of voting on the proposition — which was guaranteed to all of the taxpayers by the Constitution, and which was accorded only to the taxpayers in Evangeline parish — the taxpayers in Acadia parish had the right merely to sue to annul the result of 'the election, within 60 days after, it was promulgated. And the majority opinion expressed in this ease — and from which I respectfully dissent — is that, because the taxpayers residing in Acadia parish had the right to sue to annul the result of this election at any timfe within 60 days after it was promulgated, therefore they were given due process of law, and the same protection of the law that was enjoyed by the taxpayers residing in Evangeline parish.
The Constitution does not say how the result of an election held under the provision of section 14 of article 14 shall be promulgated. Paragraph (n) merely declares:
“Eor a period of sixty (60) days from the date of promulgation of the result of. any election held under the provisions of this section,” etc.
The authors of the clause left it to the Legislature to say what should constitute promulgation. And the Legislature, in section 22 of Act 46 of the Extra Session of 1921 (page 54), has declared that promulgation of the result of an election held under the provision of section 14 of article 14 of the Constitution shall be a publication in one issue of a newspaper published in the subdivision in which the election was held, if there be a newspaper published in the subdivision, and, if there be none, then in a newspaper published in the parish, or, if there be no newspaper published in the parish, then in a newspaper published in an adjoining parish.
My purpose in referring to the law saying what shall constitute promulgation is merely to show that it does not guarantee due process of law. It is from the date of promulgatipn that the 60 days’ prescription or limitation of the right of a taxpayer to sue to annul the result of such an election begins to run. The taxpayer who does not read the promulgation published once in a country newspaper — perhaps not in the parish where the taxpayer lives — loses his right, in 60 days, to complain of the tax imposed upon him by the vote of his neighbors, without his knowledge.
If that process of taxing and taking private property is due process of law, it is not easy to imagine a process that would be not due process of law.
The provision in the Fourteenth Amendment which forbids a state /to deny to any person the equal protection of the laws guarantees something more than what we mean usually when we speak of due process of law.
“The due process clause requires that every man shall have the protection of his day in court, and the benefit of the general law — a law which hears before it condemns, which proceeds not arbitrarily or capriciously, but upon inquiry, and renders judgment only after trial, so that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society. Hurtado v. California, 110 U. S. 516, 535, 28 L. Ed. 232, 238, 4 Sup. Ct. Rep. 111, 292. It, of course, tends to secure equality of law in the sense that it makes a required minimum of protection for every one’s right of life, liberty, and property, which the Congress or the Legislature may not withhold. Our whole system of law is predicated on the general fundamental principle of equality of application of the law. * * * But the framers and adopters of this amendment were not content to depend on a mere minimum secured by the due process clause, or upon the spirit of equality which might not be insisted on by local public opinion. They therefore embodied that spirit in a specific guaranty.
“The guaranty was aimed at undue favor and individual or class privilege, on the one hand, and at hostile discrimination or the oppression of inequality, on the other. It sought an equality of treatment of all persons, even though all enjoyed the protection of due process.'” Truax v. Corrigan, 257 U. S. 332, 42 Sup. Ct. 129, 66 L. Ed. 263.
*344 I do not doubt that, if a taxpayer residing in that part of the school district that is in Acadia parish should take this question to the Supreme Court of the United States by writ of error, contending that the construction which the Supreme Court of Louisiana has put upon the Act 152 of 1920, and upon paragraph (n) of section 14 of article 14 of the state Constitution, is violative of the due process clause and of the equal protection clause of the Fourteenth Amendment, the ruling now made would be reversed.
I do not believe that the constitutional convention intended to do or say anything so incongruous, after prescribing, in IS long paragraphs covering 5 pages of the Constitution, the limitations and restrictions upon the right of the governing authorities of the municipalities and other subdivisions of the state to issue bonds and levy special taxes, as to say, in the nineteenth paragraph, that, after 60 days from promulgation of the result of an election held for that purpose, it would not matter whether any of the requirements of the Constitution were complied with, or whether all of the constitutional limitations and restrictions were violated.
Much is said, in the majority opinion in this ease, in criticism of the rulings of our predecessors, to show that the writers of the Constitution of 1921 intended that the 60 days’ prescription or limitation should bar an action founded upon a violation of the Constitution itself, as well as an action founded upon any other illegality, or an irregularity or informality. My answer to the argument is that the writers of the Constitution of 1921 must have meant what they said.
It matters not, in this case, how far the pendulum has swung in the way of our keeping the governing authorities of the municipalities and other subdivisions of the state within the constitutional limits, in the issuing of bonds and levying of special taxes. It must not swing too far the other way. It matters not how bad has been — what is called in the majority opinion — “this condition of uncertainty and of vacillation on the part of the court,” composed of the predecessors of most of us. It matters not now how unfortunate for the Opelousas, Gulf & Northeastern Railway Company was the court’s ruling in the Daigle Case; or how improper was the court’s citation of that case in the Tremont Lumber Company’s Case. It matters not that the then chief justice, for the court, “emasculated the statute of 1910,” in the case of the St. Charles Drainage District v. Cousin; or that the court overlooked the distinction between the imeonstitutionality and any other illegality of a tax, in the Morgan’s Louisiana & Texas Railroad & Steamship Company’s Case. We must not imagine that the constitutional convention of 1921 was so anxious to correct the supposed blunders of our predecessors that the convention was willing to abolish the requirement of due process of law, and the equal protection of the laws, in the matter of issuing bonds and levying special taxes, by municipalities and other subdivisions of the state.
I agree with the majority opinion that the ruling in the case of Morgan’s L. & T. R. R. & S. S. Co. v. Tax Collector, 142 La. 198, 76 South. 606, was wrong in so far as the court then failed to distinguish between the uneoivstituiionaUty and any other illegality of a tax or bond issue. I dissented from the decision in that respect, as the official report of the case shows.
It would please me very much to concur in the opinion that these bonds are valid, if I could do it without having to reconcile my mind to the doctrine announced. We always enjoy upholding taxes levied for public.education. But the end never justifies the means. And I doubt that the end will come in this case until the federal question is decided.