OVERTON, J.
 

 On April 5, 1926, the St. Landry parish school board passed Ordinance No. 148, creating the Grand Prairie school district, consisting of territory entirely within the parish of St. Landry. The district, as thus created, is traversed diagonally by the Opelousas-Ville Platte gravel highway. That part of the district which is east of the. highway is known as Grand Prairie, and that part of it which is west of the highway is known as Plaisance. The school board as the governing authority of the district, after creating the district, called an election to be held within it for the purpose of obtaining authority to incur debt and to issue negotiable bonds, in the sum of $60,000, for the purpose of building and equipping a schoolhouse in the district. The proposition submitted at the election failed to carry. The school board shortly thereafter at one of its sessions passed thefollowing motion, to wit:
 

 “Mr. Baillio, duly seconded, moved that Ordinance No. 148 passed at a meeting of the school board of the parish of St. Landry on April 5, 1926, creating the Grand Prairie school district No. 5 of St. Landry paxdsh, comprising territory of' the First and Fifth police jury wards of the parislx of St. Landry, La., be and is hereby repealed.”
 

 This motion was unanimously carried. The school board thereafter, on the same day, passed Ordinance No. 150, creating another school district, bearing the same name and number and embracing the same territory as the former one, with the exception that the southern- line of - the former district was placed farther north so as to omit a part of the territory of which that district had consisted, the part omitted being a part of the Plaisance section. The school board then ordered an election to be held in the newly created district on July 2, 1926, for the purpose of authorizing the issuance of bonds in the sum of $60,000 to erect and equip a school building in the district which was the same proposition as that submitted to the property taxpayers of the former district. On July 5, 1926, the school board met for the purpose of canvassing the returns and declaring the result of the election. The board found on that day that the proposition submitted to the taxpayers of the district, qualified to vote at the election, had carried by 63 votes in number, and by $104,675 in the amount of the assessed valuation of the property voted, and declared the result accordingly, and on the same day authorized the issuance of the bonds, and levied a tax of 5 mills on the dollar on the assessed valuation of all property, subject to-taxation in the distinct, for the year 1926, for the purpose of retiring the bonds.
 

 Within 60 days after the promulgation of the election, a number of property taxpayers of the district, who were qualified to vote at an election for the issuance of bonds therein, brought the present suit for the purpose of annulling Ordinance No. 150, creating the district, of annulling the election, and also the ordinance authorizing the issuance of the bonds, and the one levying the tax.
 

 One of the grounds urged against the legality of Ordinance 150, creating the district, is that a district comprising the same and additional territory was created by Ordinance No. 148, and while the ordinance last mentioned was supposed to have been repealed by a motion made to that effect, yet that the ordinance could not be repealed by a mere motion, but only by a valid ordinance, regularly enacted, and hence that a district comprising the same territory, -and more in addition, was already in existence when the district that voted the bonds-was created.
 

 
 *209
 
 When the law requires that in certain matters public corporations shall proceed by ordinance and requires ordinances to be enacted with certain formalities and procedure, an ordinance, of course, is necessary to accomplish the purpose intended, and when once adopted it may be repealed only by an ordinance. 28 Cyc. 385. Where, however, a public corporation is given power to legislate in regard to a particular subject-matter, and the law is silent as to the mode in which the power shall be exercised, an enactment by the public corporation is valid whether it is in the form of an ordinance or resolution, even if the enactment is of a permanent nature. It is only when the law provides that certain subjects shall be governed by ordinance and that certain formalities shall be requisite to the enactment of an ordinance that it is proper for the courts to set aside the vote of the governing body of a public corporation upon the ground that the enactment was a resolution when it should have been an ordinance. 19 R. C. L. § 195, p. 895. There is no substantial difference between a motion and a resolution. State of South Dakota ex rel. Wagner v. Summers, 33 S. D. 40, 144 N. W. 730, 50 L. R. A. (N. S.) 206, Ann. Cas. 1916B, 860. The law does not require that school boards shall proceed with any particular formality in the creation of school districts or in the adoption of ordinances. The motion was published as an ordinance. Simply because the will of the school board is couched in the language of a motion instead of that of an ordinance is immaterial. In our opinion, the so-called motion effected the repeal of Ordinance 148 against which it was expressly directed.
 

 It is also urged that Ordinance No. 150 is invalid because it is an attempt to contract the limits of the district that was created by Ordinance No. 148, when no authority for such action is to be found in the laws of this state, and because the action of the school board in passing the ordinance was a mere-scheme for eliminating a part of the residents and taxpayers of the former district who were known to be opposed to the bond issue, so as to make it possible for the bonds to be voted.
 

 Act 152 of 1920 authorizes parish-school boards to create school districts in connection with the exercise of the power of special taxation. Since a school board has such authority, it has, by implication, the-power, where circumstances permit, to abolish a district created under this authority, and since the power expressly granted is a continuing one, to create, if it sees proper, another district of smaller area, which does not include some of the territory of the one abolished, or, if it deems best and circumstances permit, to amend an ordinance creating a district, so as to contract or enlarge its boundaries, avoiding, however, the creation of overlapping districts. See Moore v. Board of Directors, 131 La. 757, 60 So. 234, And Drouin v. Board of Directors, 136 La. 393, 398, 67 So. 191. These decisions interpret different statutes from the one here presented, but the principle involved is the same.
 

 We held that. Ordinance No. 148, creating the former district, was repealed. There was no legal reason why that district should not have been abolished, and a new one with somewhat different boundaries created. It does not appear that the district had contracted any indebtedness, and it appears that within 60 days after it was created it refused to sanction the bond issue submitted to it Hence there was no reason for continuing the-district in existence. If a majority of the property taxpayers residing in a smaller area were apparently willing to vote the bonds for the purpose of erecting and equipping a schoolhouse, there was no reason why, after abolishing the former district, a new district of smaller area should not be created to enable them to have the schoolhouse by voting-
 
 *211
 
 the bonds. Our conclusion, therefore, is that plaintiffs’ xjosition in this respect is not well founded.
 

 Plaintiffs also urge that the creation of the school district by Ordinance No. 150 is invalid, because, aside from the other questions raised, which we have considered, the school board flagrantly abused the discretion vested in it by creating the district, and that to annul the creation thereof would result in the taking of their property without due process of law. This contention is based on the position that the entire width of the district is transversed by a low-lying terrain, or natural basin, which is inadequately drained, and that the roads intersecting it are impassible during a greater part of the year, and that this condition makes it impossible for plaintiffs’ children to attend school, during a considerable part of the session, at Grand Prairie, where the school building, it is said, is to be erected.
 

 Considerable evidence has been offered in support of this position. While our examination of the evidence impresses us with the fact that the road leading from the Plaisance settlement to the Grand Prairie settlement is not during and immediately following rainy weather what it should be, especially at and near Bayou Carrón, yet, on the other hand, it must be confessed that the record discloses that during the session of 1925-26, a motor driven transfer was operated by the school board from the Plaisance settlement to the present schoolhouse in Grand Prairie, at the request of a number of residents of Plaisance, so that children in the higher grades might attend the Grand Prairie school, and that, out of 172 days on which the transfer was to operate, only 8 days were lost on account of both rains and bad roads. It would require proof of .a gross abuse of discretion to justify a court in interfering with the creation of a. school district. Drouin v. Board of Directors, 136 La. 393, 67 So. 191. The record in this instance does not disclose such an abuse. This phase of the case might be disposed of on another ground, but we have preferred disposing of it upon the ground insisted upon by plaintiffs.
 

 Plaintiffs also urge that the election held for the voting of the bonds is null and void. One of the grounds upon which this contention is based is that the district consists of a part of precinct 4 of the Fifth police jury ward, a part of precinct 1 of the same ward, and a part of precinct 2 of the First police jury ward, and that, although the district is composed of parts of three precincts, lying in two wards of the parish, the school board provided and gave notice of only one voting place, which was at the Grand Prairie schoolhouse, in precinct 4 of the Fifth ward, whereas it should have provided and given notice of a voting place in each precinct, and that, as a result of this failure, some 57 taxpayers, who were, voters residing in precincts 1 and 2, were deprived of the right to vote in said election.
 

 The Grand Prairie schoolhouse is in the district, and notice that it was the voting place established was given. None of the 57 taxpayers, mentioned above, offered to vote, and, so far as the record discloses, no property taxpayer residing in the district, and qualified to vote, was denied the right to do so, because he resided in either the First or Second precincts. But the question is whether they had, in this election, a legal right to vote dt the Grand Prairie schoolhouse in the Fourth precinct of the Fifth ward, and hence, whether the law required them to go there to vote?
 

 Section 1 of article 8 of the Constitution of. 1921, in fixing the qualifications of an elector in an election by the people, so far as relates to residence, omitting only that part of this qualification relating to removal from one precinct or parish to another, reads:
 

 “He-shall have been ah actual bona fide resi-. dent of the state for two years, of the parish
 
 *213
 
 one year, of the municipality in municipal elections four months, and of the precinct, in which he offers to vote, three months next preceding the election. * * * ”
 

 With reference to taxpayers, as voters, on questions submitted to them, section 3 of the same article provides that:
 

 “Upon all questions submitted to the taxpayers, as such, of any municipal or other political subdivision of this state, the qualifications of all such taxpayers as voters shall be' those of age, residence, poll tax payment, and registration prescribed by this Constitution without regard to sex, and there shall be no voting by proxy.”
 

 It might be assumed without so saying that the Constitution does not undertake to create precincts throughout the state, but has left that matter to the Legislature. The Legislature by Act 130 of 1916, which is the general election law, has established precincts by making each police jury ward in every parish in the state, except the parish of Orleans, which has no such wards, a precinct, and at the same time has authorized each police jury to modify this provision by subdividing a ward, in accordance with certain directions, into precincts, the number of precincts which may be established in a ward being dependent upon the number of polling places that may be properly established therein. Act 130 of 1916, §§ 38 and 39. But the provisions of this act, as appears from the first section thereof, are not applicable to elections for the issuance of bonds, but are confined to elections to elect public officers, to elections upon propositions to amend the Constitution, and to municipal elections in towns having a . population of 2,500 or more. We are aware of no express provision of law providing for or authorizing the creation of precincts for elections on propositions to authorize the issuance of bonds or the levy of special taxes, but, as such elections are sanctioned both by the Constitution and by statute, the authority to create precincts, in order to hold them, must exist. We think that the power to create precincts for the purpose of a bond election is to be found in section 12 of Act
 
 46
 
 of 1921 (Extra Session), reading as follows:
 

 “The governing authority ordering the election, shall designate the polling places; provide the ballot boxes; ballots; valuations of property, and compiled statement of the voters in number and amount, and fix the compensation of the election officers. It shall appoint for each polling place, three commissioners and' one clerk of election (all of whom shall be registered voters).”
 

 This act, among other things, provides for the holding of elections on propositions to vote bonds, called by school boards for school districts and by the governing bodies of other political subdivisions of the state for their respective subdivisions. There is implied, we think, in the power to name the polling places and to hold the election, delegated in the act, the power to define the precinct for each polling place named, whether by adopting the precincts, or parts thereof, within the district, created by the police jury for general election purposes, or by defining new precincts therein; and also think that when the school board, in calling the election, names but one polling place, it necessarily makes the district one precinct for the purposes of the election. All who have resided in the territory, comprising a precinct thus created, for three months, and who are registered voters from that territory and possess the additional qualifications required, are entitled to vote in the election at the polling place named by the school board for their precinct, whether the entire district be made one precinct or not, and although, in'order to vote, it is necessary for some of them to vote in a precinct different from one created by the police jury for general election purposes, for in so doing, quoad the special election, they are not voting outside of their precinct.
 

 In our opinion, the views here expressed do
 
 *215
 
 not conflict with the rulings in Milton v. Lincoln Parish School Board, 152 La. 761, 94 So. 386, Whatley v. La Salle Parish School Board, 155 La. 797, 99 So. 603, and Shautin v. Board of Commissioners of St. Landry-St. Martin Gravity Drainage Dist. No. 1, 159 La. 439, 105 So. 441. In the Milton Case the district was composed of parts of two parishes, and this was true also in the Shautin Case. In both cases only one polling place was named by the governing authorities of the districts, thus requiring those of the voters, who resided in that part of each district lying in the parish in which no polling place had been named, to go into another parish to vote. The court properly held in both cases that this was illegal; that such voters had no right to vote in a parish other than that of their residence. Here, however, the case is different. The district lies wholly in one parish. The Legislature did not and could not authorize,, for obvious reasons,, the creation of a precinct composed of parts of two parishes, -but it could, and we think did, authorize the creation of a precinct in a school district, for the purpose of a bond election, composed of parts of two or more precincts, which were created for general election purposes. In the Whatley Case the school district was wholly in one parish. There were two precincts in the district. The polls were not opened in one of them, although they were ordered to be opened there. As a result a sufficient number of electors were deprived of the right to vote to defeat the election, and the election was annulled. This case would be pertinent if the law required the opening of two or more polling places in the district, and one of them • was not opened. But the law did not so require, and hence the decision is not pertinent.
 

 Our conclusion is that the entire district, in this instance, was legally constituted one precinct, and that all who had resided in the district and precinct for three months, and who were registered from that territory ánd possessed the remaining requirements to entitle them to vote, had a right to vote at the polling place named therein, and hence were not deprived of their votes.
 

 It is also urged by plaintiffs that the list of those entitled to vote at the election, together with the assessed valuation of their property, furnished the commissioners of election, was not prepared by the registrar of voters or by any one connected with his office under his direction. The evidence discloses that the superintendent of schools employed Roy D. Edwards, an abstracter, to prepare a list of those owning real property. The list prepared by him was delivered to the superintendent, after which the names of those in the district owning personal property, together with the assessed valuation of their property, were added, and the list was then delivered to the registrar of voters, who, after adding a few more names of the owners of personal property and the assessed valuation of their property, signed the list, after which it was delivered to the commissioners of election. The presumption is that the registrar found the list correct after adding the names added by him, otherwise he would not have approved it by signing it. We think that the evidence shows a substantial compliance with the law. Section 14 of Act 46 of 1921 (Extra Session). Moreover, by the section cited, no defect or irregularity in, or omission from, the list of voters furnished by the registrar is sufficient to affect the validity of the election, unless it be established that voters were thereby deprived of votes sufficient in number and amount to change the result of the election. No such showing has been made here. The facts in this case differentiate it from Elkins v. Board of School Directors, 138 La. 207, 70 So. 99, and Cain v. Vernon Parish School Board, 142 La. 744, 77 So.
 
 *217
 
 584. Besides, since those cases arose, the law has been somewhat modified by the closing paragraph of section 14 of Act 46 of 1921 (Extra Session), stated almost literally above. Bradford v. Grant Parish School Board, 154 La. 242, 97 So. 430.
 

 Plaintiffs also urge that 16 votes were cast and counted for the proposition submitted to the taxpayers when those casting them had no right to vote, and that 3 votes, which were legally east against it, were not counted, because it was erroneously considered that they were spoiled ballots. It is unnecessary, however, for us to pass upon the validity of these votes. Should we allow plaintiffs, as to them, all that they contend for and deduct the alleged illegal 16 votes east for the proposition from the total of the votes cast and counted for it, and add to the votes cast against it the 3 rejected ballots voted against it, there would still remain a clear majority in number and amount in favor cf the proposition.
 

 Plaintiffs also contend that the ordinances of the school board levying the tax for the yeár 1926 and ordering the issuance cf the bonds were prematurely adopted, because they were passed before the result of the election was promulgated by publication in a newspaper, as provided by section 22 of Act 46 of 1921. It appears that the publication in a newspaper was not made until three days after the passage of these ordinances. However, the result was published. It seems to us that it would be vain now to annul the ordinances, when they could be immediately passed again, the publication having been made. In fact, it is said, though it forms no part of the record, that since plaintiffs raised this point in the lower court the board has adopted another ordinance levying the tax.
 

 Plaintiffs also suggest in their brief that the creation of the school district is null and void, because the district overlaps another school district in contravention of section 2 of Act 152 of 1920. No such issue was raised in the pleadings, but plaintiffs contend that they have a right to urge- the point, because defendant offered an ordinance in evidence which they claim establishes this fact. When evidence is admissible under the pleadings it does not have the effect of enlarging them so as to create a new issue. We aré not prepared in this instance to hold that the issues were thus enlarged. Moreover, it does not clearly appear that an overlapping district was created. We would not feel justified in holding that such a district was created in the absence of a clear issue made in the lower court.
 

 The trial court rejected plaintiffs’ demands.
 

 For these reasons, the judgment appealed from is affirmed.
 

 O’NIELL, O. J., dissents and hands down reasons.
 

 ROGERS, J., dissents for the reasons set forth in the dissenting opinion of the Chief Justice.
 

 BRUNOT, J., dissents from the refusal of a rehearing.