The judgment appealed from is therefore affirmed.

---

(113 So. 842)

No. 28559.

### LUDEAU et al. v. VILLE PLATTE GRAVITY DRAINAGE DIST. NO. 10.

July 11, 1927.

*(Syllabus by Editorial Staff.)*

1. Drains ⟪75—Where election officials were not appointed by authority designated by statute, drainage district bond and tax election was void (Act No. 238 of 1924, § 17).

Under Act No. 238 of 1924, § 17, failure of governing authority ordering an election to appoint three election commissioners and a clerk as required therein renders void an election held for voting bonds and taxes to improve the drainage district and construct drainage works.

2. Drains ⟪75—President of drainage district board of commissioners is not authorized to appoint clerk and commissioners of drainage district tax election (Act No. 238 of 1924, § 17).

Under Act No. 238 of 1924, § 17, the president of the board of commissioners of a drainage district has no authority to appoint either the commissioners or the clerk of a district tax election, but such appointments are to be made by the governing authority ordering the election.

3. Drains ⟪75—Drainage district tax election is not void for mere informalities or irregularities not affecting result, in absence of fraud.

Court will refuse to annul a drainage district tax election for mere informality or irregularity in the method of conducting it, where there is no evidence of fraud, and it is evident that the informality or irregularity did not affect the result.

4. Drains ⟪75—Where informalities and irregularities existed and may have changed the result of drainage district tax election, election is void.

Courts have no right to dispense with election requirements which the lawmaker has established as necessary to safeguard the rights of the minority of taxpayers, and where informalities and irregularities may have changed the result, drainage district tax election will be held void.

Appeal from Thirteenth Judicial District Court, Parish of Evangeline; B. H. Pavy, Judge.

Suit by Emile Ludeau and others, taxpayers, against the Ville Platte Gravity Drainage District No. 10, to have a special tax election declared void. Judgment for defendant, and plaintiffs appeal. Judgment annulled, and election declared void.

S. W. Gardiner, of Ville Platte, for appellants.

R. Lee Garland, of Opelousas, and J. Cleveland Fruge, of Ville Platte, for appellee.

O'NIELL, C. J.  This suit is brought by three taxpayers residing in the Ville Platte drainage district No. 10, in Evangeline parish, to have a special tax election which was held in the district on the 7th of September, 1926, declared null and of no effect.  There is no attack on the ordinance of the police jury creating the district or on the appointment or qualifications of the board of commissioners who, as the governing authority for the district, ordered the election.

There were three distinct propositions submitted to the taxpayers for approval, viz.:

First.  To incur a debt and to issue negotiable coupon bonds of the district for the sum of $60,000, to run 40 years from their date, to be payable serially and at such times as the board of commissioners might prescribe, and to bear interest at a rate not exceeding 6 per cent. per annum, payable semiannually, for the purpose of dredging and constructing drainage ditches and improving the gravity drainage of the district.

Second.  To levy and collect annually for 40 years, commencing in 1927, an acreage tax or forced contribution of 12 cents per acre on the land in the district, for the purpose of constructing gravity drainage works.

Third.  To incur a debt and issue bonds to the amount of $25,000, to run not longer than 40 years from their date and to bear interest at a rate not exceeding 6 per cent. per annum, for the purpose of constructing gravity drainage works, said bonds to be payable from and secured by the acreage tax or forced contribution of 12 cents per acre for the term of 40 years commencing in 1927.

After the election, the board of commissioners met for the purpose of canvassing the returns, and proclaimed the result to be that 141 votes, representing an assessed valuation of $209,915, were cast for or in favor of the three propositions, and that 116 votes, representing an assessed valuation of $180,070, were cast against the three propositions, and

that there was therefore a majority of 25 votes in numbers and $29,845 in assessed valuation in favor of the three propositions.

The plaintiffs' first complaint is that, notwithstanding there were two voting precincts in the district, namely, the First precinct of the First ward and the Sixth precinct of the First ward, the board of commissioners designated only one polling place and the election was held only at that polling place, namely, the courthouse, in the town of Ville Platte, in the First precinct of the First ward, and there was therefore no opportunity given to the qualified voters residing at Little Mamou, in the Sixth precinct of the First ward, to vote in the election.

The second complaint is that, notwithstanding section 17 of Act 238 of 1924 requires that "the governing authority ordering the election * * * shall appoint for each polling place three commissioners and one clerk of election," the board of commissioners ordering this election did not appoint either the three commissioners or the one clerk even for the one polling place which was designated and at which place alone the election was held, but merely declared, in the ordinance calling the election, that five persons, namely, Avie P. Vidrine, Jules A. Soileau, Dolsy Soileau, O. A. Rozas, and J. C. Fruge, should "act as election officials."

The third complaint is that, of the five so-called "election officials," only two, namely, J. C. Fruge and Avie P. Vidrine, were present at the polls during the election; that they called upon and appointed a bystander, Adraste Veillon, to serve as the third commissioner; that he and Avie P. Vidrine were the only persons who were sworn to perform the duties of commissioners; that Adraste Veillon, after being sworn, absented himself from the polls for about 4 hours while the election was going on; that during his absence one Joel Guidry, who was not appointed or sworn to serve as a commissioner, acted as such;

and that no one was ever appointed or sworn to serve as clerk of election.

The fourth complaint is that, notwithstanding section 23 of the Act 238 of 1924 requires that, in such elections, the commissioners shall, within 48 hours after closing the polls, deliver to the clerk of court, to be filed in his office, a duplicate tally sheet and duplicate compiled statement of the number of votes cast for and against the propositions and the assessed valuation of property voted for and against the propositions, no such duplicate tally sheet or compiled statement was ever delivered to or filed by the clerk of court.

The fifth complaint, made as an alternative allegation, to be considered only in the event that the court should not declare the election invalid for the reasons heretofore stated, was that, as to the assessed valuation of the property of those who voted at the election, there was not a majority of valid votes cast for or in favor of any one of the three propositions which were submitted to the voters. In that connection, the plaintiffs, in their petition, named 11 taxpayers who were allowed to vote a total assessed valuation of $7,980 without having paid their poll taxes for 1924 or 1925; and it was proven and finally admitted that 8 of them, who voted a total assessment of $6,750, had not paid their poll taxes for 1924 or 1925. It was alleged that 4 others, named in the petition, who voted a total assessment of $20,950 for the three propositions, were disqualified, one being not a resident of Evangeline parish and the three others being not registered voters; and, as to the 3 alleged to be not registered voters, who voted a total assessment of $5,240 for the three propositions, it was proven and finally admitted that they were not qualified voters. As to the one alleged to be not a resident of the parish, who voted an assessment of $15,710, the evidence left some doubt as to whether he should or should not have been considered an actual bona fide resident of the parish. It was al-

leged and proven and finally admitted that four other taxpayers, named in the petition, who voted in favor of the three propositions, were allowed to vote a total assessment exceeding by $8,200, the actual amount of their assessments. It was alleged, and was admitted, that one taxpayer voted an assessment of $6,080 against the proposition to incur the debt of $60,000, etc., and against the proposition to incur the debt of $25,000, etc., and that the so-called "election officials" refused to count his vote, but cast it out as a spoiled ballot, merely because he did not vote either for or against the proposition to levy an acreage tax or forced contribution of 12 cents per acre for the purpose of constructing gravity drainage works.

The court ruled that the taxpayer who voted the assessment of $15,710, and who was alleged to be not an actual, bona fide resident of the parish of Evangeline, was a resident of the parish, and, as a consequence, that there was a small majority in amount voted in favor of the three propositions; otherwise, there would have been quite a large majority against the three propositions, and especially the two propositions to incur the debts of $60,000 and $25,000, respectively.

The district judge rejected the plaintiffs' demand and dismissed their suit, and they have appealed from the decision.

The plaintiffs' first complaint is the same that was made by the plaintiffs in the case of Sylvestre et al. v. St. Landry Parish School Board (No. 28,380) 113 So. 818.[1] It was held in that case by a majority of the members of the court that the declaration in section 12 of the Act 46 of 1921 (Ex. Sess.) p. 52, that "the governing authority ordering the election shall designate the polling places" did not mean that the governing authority should designate a polling place for the voters residing in each voting precinct, but gave the governing authority the right to convert the whole taxing

_____
[1] Ante, p. 204.

district into one voting precinct, by designating only one polling place in the district. Section 17 of the Act 238 of 1924, under authority of which the election in contest in this case was held, also required the governing authority for the drainage district to designate the polling places, viz.:

"The governing authority ordering the election shall designate the polling places, provide the ballot boxes, ballots," etc.

An application for a rehearing in the case of Sylvestre v. St. Landry Parish School Board was denied to-day, by a scant majority of the members of the court, and, as they adhere to their opinion on that issue in the present case, the plaintiff's first complaint is not sustained.

There was no offer on the part of the so-called "election officials" to explain why so many taxpayers not having the necessary qualifications to vote were allowed to vote for the propositions which were submitted at the election, or why 4 others were allowed to vote for the propositions valuations largely exceeding the amount of their assessment. The wrongs committed in that respect, however, if corrected, would not be sufficient in amount to change the result of the election, unless it should be held also that the taxpayer who voted an assessment of $15,710 for the three propositions, and who was alleged to be not a resident of the drainage district or of the parish of Evangeline, was in fact not an actual, bona fide resident of the parish. There is some doubt about that. He testified that he moved into Evangeline parish in 1923 and retained his residence there, on a farm within the drainage district. It appears that he moved thence to Eunice in St. Landry parish, in November 1925—10 months before the date of the election—and established his post office address there, and there it remained at the time of the trial. He admitted that he spent most of his time in Eunice in 1923 and 1924, and paid his poll taxes in St. Landry parish, but that he frequently returned to his farm in Evangeline parish, and slept at the home occupied by his nephew there, after November, 1925, and that he considered that place his home. If the election had been held in strict compliance with the requirements of the statute, we would perhaps concur in the ruling of the so-called "election officials" and of the district judge that the preponderance of the evidence sustained the right of that taxpayer to vote in Evangeline parish on the 7th of September, 1926. The grave doubt about the question, however, together with the closeness of the result of the election, after correcting the several gross errors committed by the so-called "election officials," serves to emphasize how important it is to obey the requirements of the law for safeguarding the rights of the minority of the taxpayers when the majority undertakes to impose a tax upon them against their protest and perhaps without any compensating benefit or advantage to them.

[1] The fact that only two of the three men who served as election commissioners took the oath required by section 20 of the statute, and that one of the two absented himself during 4 hours while the election was going on, and that no one served as clerk at the election, and that no duplicate tally sheet or compiled statement of the votes cast was ever delivered to the clerk of court or filed in his office, might not be sufficient in themselves to nullify the election. But the failure of the governing authority, ordering the election, to appoint three commissioners and a clerk of election, as required by section 17 of the statute, is in our judgment a sufficient cause to declare the election null and of no effect. The language of the law could hardly be more peremptory, viz.:

"The governing authority ordering the election shall designate the polling places, provide the ballot boxes, ballots, valuations of property, and statement of the voters in number and amount, and fix the compensation of the election

officers. *It shall appoint for each polling place three commissioners and one clerk of election.* Only property taxpayers qualified as electors under the Constitution and laws of this state shall be entitled to vote at any election hereunder."

[2] The powers and responsibilities of those who serve as commissioners and clerks of election are very great. If the governing authority in this case, in naming the so-called "election officials," had named only four men, it might be argued with some force that the intention was that the three first named should serve as commissioners and that the fourth should serve as clerk of election. But the president of the governing authority, whose duty it was to publish a notice of the election, did not understand that the appointments were made in the rank and order suggested, for, in his published notice, he reversed the order, and declared:

"The following persons shall serve as clerk and commissioners of election: Avie P. Vidrine, Jules A. Soileau, Dolsey Soileau, O. A. Rozas and J. C. Fruge."

The president of the board of commissioners of the drainage district had no authority to appoint either the commissioners or the clerk of election.

[3, 4] This court has often and invariably refused to annul an election for a mere informality or irregularity in the method of conducting the election, where there was no evidence of fraud and no doubt that the informality or irregularity complained of did not affect the result of the election; but it is not certain that the result in this case would have been the same if the requirements of the law had been well and faithfully observed. The courts have no right to dispense with the requirements which the lawmaker has established as being necessary to safeguard the rights of the minority of the taxpayers, in allowing the majority to impose taxes upon them against their will and without regard for any special benefit or advantage to them. The high-sounding complaint against annul-ling the will of the people as expressed at the polls must not distract us from all thought of the will of the people as expressed in their legislative assemblies.

The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the special tax election held in the Ville Platte gravity drainage district No. 10 on the 7th of September, 1926, was null and of no effect. The defendant, drainage district, is to pay the costs of this suit.

OVERTON, J., concurs in decree.

---

(113 So. 845)