**DELTA ENVIRONMENTAL SERVICES, INC. and J. Stuart Ellis, Jr.**

v.

**PLAQUEMINES PARISH GOVERNMENT and Albert J. Beshel, Benny Rousselle, Jerry Hodnett, Mike Mudge, Morris Treadway, Sullivan Vullo, Gary Ragas, Bryan Dickinson, Ernest Johnson and Luke Petrovich.**

Civ. A. No. 88–3678.

United States District Court, E.D. Louisiana.

Feb. 15, 1989.

---

Joseph E. LeBlanc, Jr., Eric E. Jarrell, Nesser, King & LeBlanc, New Orleans, La., for plaintiffs.

Donna E. Fraiche, Daniel E. Zelenka, II, Fred J. Cassibry, Brook, Morial, Cassibry, Fraich & Pizza, New Orleans, La., for defendants.

ROBERT F. COLLINS, District Judge.

On motion of defendants, this Court's order staying the above-styled case is hereby LIFTED and the case is hereby OR-DERED to be REOPENED.

After hearing oral argument on Motion for Summary Judgment in the above-styled case, and after considering the record, the briefs of counsel together with supporting documentation and the applicable law, the Court finds the following facts to be undisputed.

## FACTS

1. On or about February 10, 1987, plaintiff, Delta Environmental Services, Inc. (Delta), made application No. 36603 (024) to the Plaquemines Parish Office of Planning, Permits and Zoning (Permit Office) for a permit to construct an oil field waste treatment and recycling facility in a flood plain zoning district.

2. The Parish zoning ordinance [Ordinance No. 142, Section 6(M)(1)(b) ] requires all commercial and industrial uses of property, buildings or structures in a flood plain district not specifically listed in Section 6(M)(1)(a) to be approved by the Plaquemines Parish Council.

3. Ordinance No. 142, Sections 6(M)(1) and 6(M)2 state that:

M. The regulations in the FP–Flood Plain District are:

1. *Permitted Uses:*

This District is intended to comprise those areas which are subject to periodic or occasional inundation from stream overflows, storms and tidal conditions and which are not within publicly owned hurricane protection levees and pump drainage systems. The use of property and buildings or structures in the FP–Flood Plan District shall be limited to the following, subject to the performance standards of Section VI; Subsection 0:

(a) All of the following residential, commercial and industrial structures or buildings when they meet the requirements of the Parish Building and Sanitary Codes:

.   .   .   .   .

(b) All other commercial and industrial uses (except those listed above) and mobile homes, subject to the approval of the Commission Council.

2. *Conditional Uses:*

Other uses similar to the above stated uses as may be determined by the Plaquemines Parish Commission Council.

4. Because Delta's proposed use of this property in a flood plain zone is not among the list of specifically permitted uses under Subsection (a) of Ordinance 142, it required approval by resolution of the Plaquemines Parish Council.

5. On or about March 26, 1987, application No. 36603 (024) was sent to the Council and the Council in its discretion defeated the resolution by a 5–4 vote.

6. Approval of Delta's use of the property located in the flood plain zone was granted by the Council at a meeting on February 11, 1988; however, the matter was not included on the publicly noticed agenda of the meeting and Resolution No. 88–43 was introduced without suspension of the rules.

7. On or about March 1, 1988, Plaquemines Parish President, Luke Petrovich, disapproved or vetoed Resolution No. 88–43 in writing on grounds that the introduction and approval of that resolution was in violation of the Rules and laws of the Plaquemines Parish Government including Ordinance 428.

8. On May 26, 1988, the Council adopted Resolution 88–192 which rescinded and annulled Resolution 88–43.

9. On or about July 13, 1988, Delta submitted a second application for a construction permit, No. 0–572, to the Permit Office.

10. On July 14, 1988, application No. 0–572 was placed on the agenda of the Council.

11. The requisite approvals of parish department heads were not obtained prior to the Council Meeting.

12. At the council meeting of July 21, 1988, the matter of the application No. 0–572 was withdrawn from Council consideration by Councilman Vullo and no vote was taken at that time.

13. On August 1, 1988, the permit office was instructed by plaintiff, J. Stuart Ellis, Jr., to cancel application No. 0–572 and Delta submitted a third application for construction permit, bearing No. 0–619.

14. On or about October 5, 1988, Ellis was informed that the Permit Office considered application No. 0–619 incomplete.

15. At the October 5, 1988 meeting, Ellis removed certain documents from appli-

cation No. 36603(024) and attached them to application No. 0–619.

16. At the October 5, 1988 meeting, application No. 0–619 was completed and copies of it were sent by the Permit Office to the head of each parish department and to each councilman for their review and recommendations.

17. Application No. 0–619 included documents such as the State Department of Environmental Quality permit, environmental questionnaires, and other information supplied by Delta which were added to the record after the Council Meeting of March 26, 1987, and, consequently, after the record had been reviewed by the parish department heads.

18. At the October 13, 1988 council meeting, Councilman Vullo anticipated the completion of the review process of application No. 0–619 and requested that the rules be suspended in order to introduce a resolution calling for a public hearing on October 27, 1988, relative to Delta's proposed use of the property located in the flood plain zoning district.

19. On October 27, 1988, a public hearing on Delta's proposed use of the property was held, exhibits were introduced, and a transcript was taken.

20. Proponents, opponents, and experts hired by the parish were allowed to address the Council in the public hearing which lasted eight hours.

21. The matter of Delta's proposed use of property in a flood plain zone was taken under advisement to be acted upon at the November 10, 1988 meeting of the Council.

22. On November 4, 1988, and November 16, 1988, Delta requested the introduction of supplemental comments and exhibits into the record which the Council allowed.

23. At the November 10, 1988 Council Meeting, Councilman Vullo properly introduced resolutions both approving and disapproving the permit applications to be held over and considered in the usual course of business at the next regularly scheduled council meeting on November 17, 1988.

24. At the November 17, 1988 Council Meeting, the matter was decided by unanimous vote of those present against approval of the proposed property use.

25. Resolution 880451 sets forth eight (8) particular reasons among others for disapproval of the proposed property use.

## RESOLUTION OF LEGAL DISPUTES

■ Plaintiffs contend there are significant factual disputes regarding defendants' characterization of the various documents submitted for the Council's review as three separate applications for a permit. However, this Court considers these disputes to be immaterial. Whether there was one single application resubmitted several times or three separate applications does not affect plaintiffs' claim for relief based on the Council's denial of their application outlined in Counts Four and Five of the Amended and Supplement Complaints, nor does it affect the claims outlined in Count Three based on the recision of Resolution 88–43. The causes of action alleged in Counts One and Two of plaintiffs' original Complaint, Amended Complaint and Supplemental Complaint and based on the Council's refusal to place plaintiffs' permit application on the agenda are hereby deemed MOOT, since the record clearly shows that Delta's permit applications have been placed on the Council's agenda in a timely fashion, and Delta received all procedural due process to which it is entitled. See *Courts of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1983, 59 L.Ed. 2d 642 (1979) (where "interim relief or events have completely and irrevocably eradicated the effects of [an] alleged violation" of law, case is moot).

■ Count Three of plaintiffs' Original, Amended and Supplemental Complaints contends that defendants' actions in vetoing and rescinding Resolution 88–43 violated plaintiffs' civil rights, rights to due process and were done *ultra vires*. Plaintiffs sought relief from the state court in the form of a petition for Writ of Mandamus. However, the Reasons for Judgment in that proceeding indicate that these issues

were not addressed. *Delta Environmental Services v. Arthur Lee LaFrance, et al.,* No. 31–611, Twenty–Fifth Judicial District Court, Plaquemines Parish. Therefore, *res judicata* would not prohibit plaintiffs from litigating those issues in this Court. *In Re Southern Land Title Corp.,* 301 F.Supp. 379 (E.D.La.1968).

Although plaintiffs contend that factual disputes exist regarding the basis for Mr. Petrovich's veto and the Council's recision of Resolution 88–43, the dispute concerns legal issues, not material issues of disputed fact.

■ Defendants contend that the veto power of the Parish President over ordinances, pursuant to the Plaquemines Parish Charter, Art. 3, § 3.10(j), extends to resolutions as well. However, Louisiana courts have recognized the distinction between ordinances and resolutions, *James v. Rapides Parish Police Jury,* 236 La. 493, 108 So.2d 100, 102 (1959); *Sylvestre v. St. Landry Parish School Board,* 164 La. 204, 113 So. 818 (1927). Other authority recognizes the distinction between the two terms as they are commonly used in municipal charters. McQuillin, *Municipal Corporations,* Vol. 5, p. 38 (1981 Rev.Ed.). Therefore, since Art. 3, § 3.10(j) of the Parish Charter authorizes presidential veto of ordinances and not resolutions, defendant Petrovich's veto was done without authority.

However, plaintiffs would have no claim for damages as a result of the presidential veto if the Council's subsequent recision of Resolution 88–43 was authorized. Rule 15 of Ordinance 428 requires that all resolutions and ordinances be introduced by a member of the Council. This was not done in this case. Additionally, according to Rule 19(c), any matter not on the agenda may only be considered if ⅔ of the elected membership vote in favor of suspending the rules and considering the matter. These rules of procedure were not suspended by the Council when they considered Resolution 88–43.

■ Although Ordinance 428 does not specifically authorize the Council to rescind previously adopted resolutions, specific reference to the appropriate form for recision of previously adopted resolutions is made in Rule 14 of the ordinance. This Court finds that any dispute over the basis for the Council's actions is not a factual, but a legal issue, which the Court resolves in favor of defendants, given the Council's implicit authority to rescind referred to in Rule 14 of Ordinance 428.

■ Concerning Counts Four and Five of the Amended and Supplemental Complaints, plaintiffs contend that the Council's actions in denying plaintiffs' application were administrative in nature, that there was no reasonable basis for denying the application and that the hearing conducted by the Council was a mere sham. Although plaintiffs allege that those disputed issues are factual in nature, based on the record containing a transcript of the hearing and the Council's reasons for denying plaintiffs' application for a permit, together with the applicable law, the Court has concluded that there are no material issues of disputed fact and that summary judgment in favor of the defendants is appropriate.

The common thread that runs through all of plaintiffs' claims in Counts Four and Five of the Amended and Supplemental Complaints, is the assertion that the Council was acting upon a building permit application filed by Delta Environmental Services, Inc. Plaintiffs contend that although they were attempting to obtain approval to build in a Flood Plain Zone, the proposed use was a permitted one pursuant to Ordinance No. 142. (See p. 138, *supra.*) Section 6(M)(1)(a) specifically enumerates permitted uses in the Flood Plain Zone, and Section 6(M)(1)(b) states that other commercial and industrial uses are *"subject to the approval of the Commission"*, (emphasis added). Section 6(M)(2) states that other uses may be allowed as permitted by the Council. Although inartfully drafted, both sections make it clear that final authority over uses not specifically enumerated in the ordinance rests with the Council. The approval of a conditional use or of a permitted use which is not specifically enumerated, but explicitly made subject to Council approval, is not an administrative function but a legislative function. *Shelton v. City*

*of College Station,* 780 F.2d 475 (5th Cir. 1986). Generally, if the conduct complained of is viewed as legislative, the owner has no procedural due process rights. *County Line Joint Venture v. Grand Prairie, Tex.,* 839 F.2d 1142, 1144 (5th Cir. 1988).

In *Shelton v. City of College Station, supra,* a landowner sought a variance for parking requirements which would be enforced if the landowner changed the type of business conducted on the premises. Three attempts to convince a city zoning board to grant a variance failed. The landowner then brought suit, claiming a violation of substantive and procedural due process. The district court granted summary judgment for defendants on both the substantive and the procedural due process claims, quoting *Couf v. DeBlaker,* 652 F.2d 585 (5th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982), which held that local zoning decisions are legislative in nature and are governed only by limitations on legislative procedure. A Fifth Circuit panel affirmed the summary judgment for the governmental defendants as to the due process claims. *Shelton,* 754 F.2d 1251 (5th Cir.1985).

On rehearing, the court *en banc* in *Shelton* reaffirmed the view that the procedural aspect of zoning decisions are viewed under the legislative model as follows:

> We have plainly and consistently held that zoning decisions are to be reviewed by federal courts by the same constitutional standards we employ to review statutes enacted by the state legislatures.

780 F.2d at 479.

Plaintiffs contend that the conduct here involved is administrative/adjudicative and that procedural due process rights attach, *Littlefield v. City of Afton,* 785 F.2d 596 (8th Cir.1986). However, their contention is based upon an erroneous interpretation of Ordinance 142. Plaintiffs argue that the situation here involved is analogous to an application for approval of a building permit where all necessary requirements have been completed. Yet, the clear wording of the statute states that land uses in Flood Plain Zones are subject to Council approval if not specifically enumerated in the ordinance. This situation is more analogous to that in *Shelton* where approval was sought for a variance from a zoning ordinance. As in *Shelton,* the conduct here involved is a legislative function to which no procedural due process rights attach.

■ Plaintiffs' also claim that denial of their application violates their Fourteenth Amendment rights to due process and their rights to equal protection of the law. Plaintiffs have been deprived of equal protection of law only to the extent that they have been deprived of their property without due process. *Chiplin Enterprises, Inc. v. City of Lebanon,* 712 F.2d 1524, 1528 (1st Cir.1983).

"In the absence of insidious discrimination, suspect classifying criteria or infringement of fundamental interests," the scope of the Fourteenth Amendment due process review is limited to the issue of whether the decision was "arbitrary and capricious." *Shelton,* 780 F.2d at 477. "This requirement ... is met if there was any conceivable rational basis for the zoning decision." *Id.* The key inquiry is whether there exists "at least debatable" grounds for the decision.

The district court's decision in *Shelton* to grant summary judgment in favor of defendants was upheld by the Fifth Circuit. *Shelton,* at 484. Indeed, the vast majority of claims such as plaintiffs' may be disposed of by way of summary judgment. *See Stratford v. State House, Inc.,* 542 F.Supp. 1008 (E.D.Ky.1982). Further, "simple rote allegations" such as plaintiffs' claim that defendants' "willful, wanton and intentional actions" violated their due process rights could very easily be made in every zoning case. Where such allegations are not substantiated by the record, federal judicial inquiry into legislative decision making would set up federal courts as a forum for the review of every run-of-the-mill land-use dispute. *Lemke v. Cass County, NEB,* 846 F.2d 469 (5th Cir.1987).

Plaintiffs contend that the defendants' decision was arbitrary and capricious in denying their application. In reviewing

this decision under the deferential standard of a legislative model of inquiry, this Court need not focus upon record facts and may look merely to hypothesized purposes rather than insisting defendants prove the actual purpose, or basis, of the decision and the rationality of that basis for decision. *Shelton*, 780 F.2d at 480, 481. Yet, this type of inquiry is precisely the standard plaintiffs would have the Court use in reviewing the Council's decision.

Defendants, after holding a public hearing on plaintiffs' application for permit, articulated the following reasons for denial of the permit:

1. Contrary to its earlier representations, Delta lacks Federal EPA permit for discharge of waste water.

2. Delta's uncertain ability to permit the use of and develop a market for, its recycled product, which could result in prolonged storage on-site.

3. The absence of an adequate local site specific environmental impact and risk assessment.

4. The proposed siting of the facility in a high risk flood plain which federal authorities indicate is generally improper for waste handling and storage purposes.

5. Although pollution control and abatement are important local concerns, the proposed process and process output is inappropriate for the proposed site, given the local conditions specified herein, and the process' experimental and uncertain status.

6. There is insufficient guaranty bond and insurance which exposes the Parish's risk of having to pay clean-up costs.

7. Local conditions—hurricane threats, fragile ecology, coastal erosion, extraordinary levels of pollution already in the environment, location of drinking water intake—make this project in the proposed flood plain site undesirable.

8. Applicant failed to adequately address Title III requirements, including those regarding identification of hazardous waste products being brought to the facility.

Although the Court need not require that defendants show the actual basis of their decision and its rationality, consideration of the Council's enumerated reasons for denial, together with reasons suggested in counsel's briefs on the topic, indicate that there were substantial and legitimate concerns regarding the environmental impact on an ecologically sensitive area such as a Flood Plain District. The Council's conclusion that location of a solid waste disposal facility in a Flood Plain District may have significant adverse impact on the environment is at least debatable and does not violate plaintiff's substantive due process rights. *See Shelton*, 780 F.2d at 485.

Considering this Court's decision on plaintiffs' substantive and procedural due process claims, it is unnecessary to address defendants' claim to immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In accordance with the findings above, plaintiffs' claims for procedural and substantive due process, equal protection, privileges and immunities, and civil rights violations in Counts Four and Five of the Amended and Supplemental Complaints must be DISMISSED. Plaintiffs' claims for damages and injunctive relief in Counts One, Two and Three must also be DISMISSED for the above stated reasons. Defendants' Motion for Summary Judgment is hereby GRANTED, with judgment to be entered accordingly.