179 So. 52

WARD et al. v. LECHE, Governor, et al.
No. 34529.

Jan. 10, 1938.

Rehearing Denied Feb. 7, 1938.

Eugene Stanley, of New Orleans, for appellants.

Gaston L. Porterie, Atty. Gen., George M. Wallace, of Baton Rouge, Executive Counsel, Lessley P. Gardiner, Asst. Atty. Gen., and Joseph A. Loret, Sp. Asst. Atty. Gen., for appellees.

FOURNET, Justice.

This is an action instituted by certain alleged citizens and taxpayers to enjoin the enforcement of Act No. 22 of the Second Extraordinary Session of 1934, as

amended, and also that part of Act No. 5 of 1936 making an appropriation for the enforcement of the act, on the ground that the Act of 1934 is unconstitutional, and, consequently, the appropriation for the enforcement thereof is also unconstitutional.

The alleged grounds of unconstitutionality set forth in the petition are substantially stated in plaintiffs' brief as follows: "a: It is not a civil service statute at all; b: Its provisions are contrary to the theory, reasoning and intent recognized as fundamental in the enactment of a civil service statute; c: It makes no provision for proper competitive examination on the part of the applicants, nor does it require the Commission to provide for proper competitive examination on the part of the applicants. d: It takes from the particular officer possessing the fundamental constitutional right to make the appointment not only the right to use his discretion in making the appointment, but the right of making the appointment itself, in violation of the Constitution of Louisiana. e: It substitutes the judgment and discretion of the Commission itself for that of the appointing officer. f: It does not establish a merit system of fitness and efficiency as the basis upon which the appointment should be made, but makes the Commission itself the actual appointing power. g: It purports to vest arbitrary discretion in public officers without prescribing a definite rule for their guidance. h: It violates section 16 of article 3 of the Constitution of Louisiana, for the reason that the title of the

said act is not indicative of the objects contained in the act, in that while the title of the act expresses the intention to create a State Civil Service Commission, etc., the body of the act itself is not a civil service act in any respect, since it fails to contain any provisions necessary to constitute a valid civil service statute."

In response to the rule to show cause why a preliminary injunction should not issue, the defendants filed a number of dilatory exceptions and a return to the rule setting up, among other defenses, that plaintiffs' petition disclosed no cause or right of action.

For the purpose of the trial of the rule, plaintiffs filed a motion to obtain an order for a subpoena duces tecum to compel the secretary of the State Civil Service Commission to produce a number of books, papers, and documents. The secretary excepted on the ground that the facts which they intended to prove by such evidence were irrelevant and immaterial to the cause. The trial judge sustained the exception.

On the trial of the rule, the trial judge concluded that the attacks made, in plaintiffs' petition, on the constitutionality of Act No. 22 of the Second Extraordinary Session of 1934, as amended, were without merit, and, therefore, plaintiffs' petition disclosed no right or cause of action and rendered judgment refusing the preliminary injunction prayed for. From that judgment, all the plaintiffs, with the exception of T. Ludlow McNeely, have appealed.

The sole basis for this action is the unconstitutionality of the act vel non. The question of the constitutionality of an act of the Legislature presents a question of law only, State v. Capdevielle et al., 104 La. 561, 29 So. 215, and, consequently, any evidence as to the manner of enforcing the law has no bearing on its constitutionality. The trial judge, therefore, properly sustained the exceptions to the motion for a subpoena duces tecum to compel the production of the books, papers, and documents of the Civil Service Commission into court for the purpose of the trial of the rule on the application for a preliminary injunction in this case.

"It is elementary that all laws are presumed to be constitutional until the contrary is made clearly to appear, and that he who urges the unconstitutionality of a law must specially plead its unconstitutionality, and show specifically wherein it is unconstitutional," City of Shreveport v. Pedro, 170 La. 351, 127 So. 865, and "an exception of no cause of action admits the well pleaded facts, but not the conclusions of law contained in the petition," State ex rel. Garland v. Guillory, 184 La. 329, 166 So. 94, 101.

It appears from a reading of plaintiffs' lengthy petition and study of their counsel's voluminous brief that this suit is predicated on the theory that the Legislature is without authority to pass a statute applicable to state and parochial employees without creating a civil service system providing for the recognition and adoption of the merit system in the employment or appointment of applicants and for the discharge of employees for cause only. The answer to this is indicated by counsel's failure to point out any provision in the Constitution, and we know of none, save section 15 of article 14, which affects cities having a population of 100,000 or more only, placing such a limitation on the Legislature of the state, as "it is a recognized principle of constitutional law that except where limitations have been imposed by the federal and state constitution the power of the legislature is unlimited and practically absolute. * * * As a rule, therefore, and speaking generally a legislature may do what the state or federal constitution does not prohibit." Ruling Case Law, Vol. 6, § 152, p. 152. Courts are not at liberty to declare an act void because, in their opinion, it is opposed to the spirit supposed to pervade the Constitution; nor because of the harshness or unreasonableness of the act; nor can they inquire into the justice or injustice of a statutory provision, or the expediency or wisdom thereof, such being the exclusive province of the Legislature, and not of the courts; and "it is now generally recognized that the courts cannot annul or pronounce void any act of the legislature on any other ground than repugnancy to the constitution" (section 104). Ruling Case Law, Vol. 6, §§ 104, 105, 106, 107; and Corpus Juris, Vol. 12, §§ 170, 171, and 173. See, also, Grinage v. Publishing Co., 107 La. 121, 31 So. 682; State v. Rosborough, 152 La. 945, 94 So. 858.

Eliminating all extraneous allegations and conclusions of the pleader in this case,

the attack on the constitutionality of the act resolves itself into a simple proposition, i. e., is the act in violation of section 16 of article 3 of the Constitution of 1921, for the reason, as stated in appellants' brief, "that the title of the said Act is not indicative of the objects contained in the act, in that while the title of the act expresses the intention to create a State Civil Service Commission, etc., the body of the act itself is not a civil service act. * * *" In other words, it is the contention of plaintiffs' counsel that the act violates the provision of the Constitution that "every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object," article 3, § 16, in that one whose attention might be directed to the title of the act, whether it be legislator or citizen, would be misled into believing that the object of the act, as indicated by the title, was to adopt a classified civil service system or a "civil service reform system."

The term *"civil service,"* in its accepted sense, *"includes all functions under the government except military functions. In general* it is confined to functions in the great administrative departments of state. *In its enlarged sense* the term means all service rendered to and paid for by the state, or nation, or by political subdivisions thereof, other than that pertaining to naval or military affairs; all offices and positions of trust or employment in the service of the state or of such civil division or city, except offices and positions in the militia and the military departments." Corpus Juris, Vol. 11, p. 815. On the other hand, *"Civil Service Reform"* was adopted by Congress in 1883, and has a restricted application. The term, as stated in the same volume of Corpus Juris, at page 815, is "the substitution of business principles and methods for the spoils system in the conduct of the civil service, especially in the matter of appointments." (Italics ours.) See, also, Hope et al. v. City of New Orleans et al., 106 La. 345, 30 So. 842.

A mere reading of the title of the act does not in any manner indicate that the object of the act was to create a classified civil service or reform system as enacted by the Congress of the United States, but the object of the act is clearly indicated in the title, i. e., to create a State Civil Service Commission with definite powers to do certain things. There is nothing in the title of the act that is misleading or confusing as claimed by counsel for appellants.

Counsel for plaintiffs, both in brief and orally, has advanced additional attacks on the constitutionality of the act which were not raised by the pleadings, and this court, therefore, will not consider them.

For the reasons assigned, the judgment of the lower court is affirmed at appellants' cost.

HIGGINS, J., absent.

ODOM, J., and O'NIELL, C. J., dissent.

ODOM, Justice (dissenting).

I think Act No. 22, Second Extra Session of 1934, violates section 16, article 3, of the Constitution, which provides that:

"Every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object."

The title of the act indicates that its object is to create a Civil Service Commission. In fact, that is what the title says. But the body of the act does not create a "Civil Service Commission" according to the usual signification and accepted meaning of that term. The purpose of a "Civil Service Commission," according to the usual and well-understood meaning of that term, is not to have control over the appointment of subordinate officers or employees of the state, of any parish or municipality, but to make rules and regulations for their selection, and, according to general understanding, such rules and regulations invariably provide for a recognition and a putting into effect of the merit system.

Section 15, article 14, of the Constitution provides that:

"The Legislature shall provide for civil service in municipalities having a population of one hundred thousand (100,000) or more, and for the recognition and adoption of the merit system in the employment or appointment of all applicants; and shall provide against the discharge of employees or appointees without good and sufficient cause."

I refer to this provision of the Constitution, not as controlling here, but to show what is generally understood to be the meaning of the term "Civil Service."

People generally understand that the purpose of civil service laws is to do away with the spoils system in the conduct of the civil service of the state and to substitute therefor the merit system based upon qualification or efficiency. Hope v. City of New Orleans, 106 La. 345, 30 So. 842.

The following quotation from "American Jurisprudence," volume 10, page 922, sets out clearly the purpose of civil service laws and what is generally understood to be the purpose of such laws:

"The civil service laws are designed to eradicate the system of making appointments primarily from political considerations with its attendant evils of inefficiency and extravagance, and in its place to establish a merit system of fitness and efficiency as the basis of appointments to the civil service. Such laws substitute for the uncontrolled will of the appointing officer the results of competitive examinations. They require that appointments to office be made from among those who, by examination, have shown themselves to be best qualified. Examinations are also usually required for promotions from lower to higher grades within the public service, and a discharge or removal may be made only for a just cause and, under many statutes, must be upon notice and hearing. As might be supposed, the result is generally an improvement in the public service from the experience and proficiency acquired through this merit system, and in a tenure of office which is independent of political favor."

The act under consideration creates a so-called "State Civil Service Commission," to

be composed of the Governor, Lieutenant Governor, Speaker of the House of Representatives, State Superintendent of Public Education, Attorney General, Superintendent of the Bureau of Criminal Identification, and the Secretary of State. But the functions of that commission, as specified in that act, are not to make rules and regulations for the selection of the officers and employees named in the act; not to fix or prescribe a standard of fitness or competency for the particular kind of services to be rendered by an appointee, to be determined by competitive examination or contest. The selection or appointment of subordinate officers and employees is left to heads of the various departments of the state, the municipal or parochial authorities, without any suggestion to these appointing authorities as to what standards shall be observed in making the appointments or selections.

The act confers upon the commission a veto power over the heads of departments in making the selections. Section 4 of the act reads as follows:

"That the said State Civil Service Commission shall have the right and authority and is hereby vested with the duty to pass upon the *selection* of any and all heads of the police and fire departments of all municipalities as now provided by the laws of the State, except where such selection is made by direct vote of the people, and no selection made by any municipal authority shall be effective until and unless the same is approved by the said State Civil Service Commission, after such examination as it shall prescribe or deem proper."

Section 5 provides that the said Civil Service Commission "shall have the right at any time to call for examination and investigation any and all heads of the police and fire departments of municipalities, except those elected by direct vote of the people, and require of them proof of their competency to hold such position *and if, in the opinion of said Commission,* any head of a police or fire department of any municipality be incompetent for the position which he holds, *then the said State Civil Service Commission shall have power to remove him from said position and office."* (Italics are mine.)

Section 6 of the act provides that in case the said commission "shall refuse to approve the selection of any head of a police or fire department of a municipality or in which the said Commission may have removed such head of a police or fire department from office," the municipality having power to make such selection shall have the right to submit the name of another person to fill such position, "and if such municipal authority so desires, it may submit an alternative list of names from which the said Commission may approve a fit head of such department."

The last clause of section 6 of the act reads as follows:

"The said Commission in granting or withholding approval for any person for any of such positions shall not have the right to decide on whether there might be more competent person or persons available for said positions, but shall confine its findings

solely to the questions of competency of the particular person or persons under consideration."

Instead of the act's providing that the commission may adopt a standard of efficiency for all officers and employees, to be determined by examination in advance of their appointment or selection, it confers upon the commission the right to pass upon the selection after it is made, and it further provides that no selection or appointment shall be effective until and unless it is approved by the commission. No rules or regulations are laid down to govern the commission in its actions.

The opinion of the commission is to govern in all cases. What the act does, in effect, is merely to substitute the opinion of the Governor and other state officers for the opinion of local authorities as to the fitness and efficiency of purely local officers and employees. In other words, it in effect destroys local self-government by bringing all local officers and employees not elected by the people under the direct control of the Governor and other state officers.

Certainly the Legislature could not do that under the guise of adopting a so-called "Civil Service law" which is not such in fact.

I think the title to the act is misleading and is not indicative of the object expressed in the act.

I therefore dissent.

O'NIELL, C. J., concurs.