PONDER, Justice.
 

 The plaintiff, Fred Stovall, sues to annul an election held in the City of Monroe, under the provisions of Act 251 of 1940, authorizing the issuance of certificates of indebtedness in the amount of $875,000 for the purpose of raising funds to extend, enlarge, and improve the electric light and power plant and system owned by the city, and to enjoin the city from issuing the certificates. The lower court rejected the
 
 *100
 
 plaintiff’s demands and dismissed his suit. He has appealed.
 

 The Commission Council of the City of Monroe adopted a resolution on February 11, 1941, calling an election to be held on March 18, 1941, under the provisions of Act 251 of 1940 for the purpose of submitting to the qualified electors of the Municipality the question of the issuance of $875,000 Electric System Revenue Certificates, the Certificates to be secured by and payable from the revenues derived from the operation of the light and power plant and system owned by the city and to be used for the purpose of extending, enlarging, and improving the plant and system. Notice of the election was published in the official journal in the issues of February 13th, 20th and 27th, and March 6th and 13th, 1941. The resolution passed on February 11, 1941, calling the election was published only once and then on February 17th, 1941. The election was held on March 18th with 3,890 electors voting. Of this number 2,965 voted in favor of the proposition and 825 voted against it. On March 18th, the day the election was held, there were 5,196 registered voters in the City of Monroe. Act 251 of 1940 under which the election was held requires the election to be determined by a majority of the registered voters and not as is usually the case by a majority of those voting in the election. One-half of the total number of voters registered on the date of the election would be 2,598. Therefore, 2,965 electors having voted in favor of the proposition the election was carried by a majority of 367 votes. Fifty-nine days after the election, or one day before the contest period had expired, the plaintiff instituted this suit.
 

 Counsel for the plaintiff contends that the resolution calling the election was oppressive and constituted an abuse of power. This contention is based on the grounds that the election was called on such short notice and at such short period of time after the new registration began January 1st, 1941, that the general public did not have sufficient opportunity to register and participate in the election. It is suggested that it was well known by the mayor and members of the city council that there were about 10,000 residents in the city who were entitled to register and participate in the election at that time and that the action of the city council in calling the election on such short notice and within such short time after the new registration began resulted in depriving about 5,000 residents of the city of an opportunity to register and participate in the election. Counsel takes the position that this action on the part of the Commission Council was arbitrary, dictatorial, and a gross abuse of their powers.
 

 Counsel has favored us with no authority to support his contention. The registration books were open from January 1st through February 15th, 1941, thereby giving those who desired forty-five days in which to register. No attempt was made to prove that anyone was unable to register because of the lack of sufficient time. The record shows that another election was called in the city of Monroe for the 15th day of July and that only 661 additional residents . registered from March 19th to June 14th, 1941. If these voters, who registered
 
 *101
 
 during the three months after the election involved herein, had been permitted to vote in the election and had voted against the proposition submitted it would not have changed the results. Moreover, the election involved herein was called, proper notice given, and the election held in strict .compliance with the provisions of the Act authorizing it.
 

 Counsel contends that the election is void because of the lack of thirty days’ notice. He takes the position that the notice of election published on February 13th was premature, illegal, and ineffective because the resolution authorizing and directing the publication of notice did not have the force and effect of law because it had not been published for a period of ten days and that the notice published on February 20th was therefore the first legal notice published being less than thirty days before the election on account of there being only twenty-eight days in February. Counsel states in his argument and in his brief that there is no difference between an ordinance and a resolution and since the city is operating under the Commission form of Government which requires ordinances to be published in full for ten days before they become final that any notice of election published prior to the time the ordinance became final is illegal and ineffective.
 

 The only authorities cited by counsel to support his contention are the acts of the Legislature dealing with Commission form of Government and the Charter of the City of Monroe to the effect that ordinances and resolutions passed in due form by the council must be approved by the mayor and published in the official journal before they shall have the effect of law; and to the effect that ordinances must be published for ten days before they become final. Conceding for the purpose of this discussion that the resolution calling the election had to be published ten days to be of effect, it could not avail the plaintiff for the reason that the provision in Act 251 of 1940 dealing with the resolution calling the election makes no mention of and does not require the giving of the notice of election. The first paragraph of section 9 of Act 251 of 1940 provides that when the governing authority of a municipality desires to issue certificates it may adopt a resolution by a vote of two-thirds of its members, stating the amount of the certificate proposed to be issued, the period of time they shall run, the rate of interest they shall bear, the purpose for which they are issued, description of the property, description of the properties of which the incomes and revenues are to be pledged to secure the certificates, the date of the election and the polling- places. Nowhere is it stated or inferred that the resolution must provide for the notice of election. The second paragraph of Section 9 of the Act provides for the notice of election which reads as follows:
 

 “Notice of such election shall be given by publication for thirty days in a newspaper published in the municipality or in the parish in which the municipality is situated. Such notice shall embrace substantially all matters required to be set forth in the resolution requiring the election shall be signed by the Mayor or other chief executive officer of the municipality.”
 

 
 *102
 
 From a mere reading of the provision dealing with the notice of election it is apparent that it was intended to form no part of the resolution calling the election for the reason that it is stated that the notice of election shall set forth substantially what is contained in the resolution. This negatives the idea that the notice of election is a part of the resolution. The Act provides that the
 
 notice
 
 shall embrace substantially the matters contained in the resolution and that such notice shall be published for a period of thirty days. The notice of election, involved herein was given in strict compliance with the statute. The public had the notice of the election as the law required. No one could be misled or prejudiced and the purpose of the law requiring the notice was literally complied with. McQuillan in his work, Municipal Corporations, 2d ed., Vol. 5, page 1002, at Section 2356 states:
 

 “The provisions as to notice are usually regarded as mandatory and must be substantially complied with; they cannot be ignored. The notice in its recitals should observe the mandatory legal provisions, otherwise the election and the action authorized thereby will be void. However, a •compliance with the spirit and purpose of the law in such manner as to afford the public an opportunity to know when and where the election was to be held and the object of the same is all that is necessary.
 

 “The notice must be published for the time prescribed by statute, and must be in form sufficient and contain all the essential particulars required
 
 by
 
 the statute or charter, or state constitution. Where the notice of a bond election fails to give the particulars required by the constitution or statute, the election is void. But while statutory requirements as to the notice of election must be followed, it is sufficient, where they are followed, notwithstanding the requirements of a municipal resolution in regard thereto, at variance with the statute, are not complied with. Furthermore, if no particular form of notice-is required by the statute, any kind of a notice by the proper officers of the city that informs the people of the object and purpose of the election is a sufficient notice or, if there is no other provision to the contrary, the notice of election prescribed by law for general elections is sufficient.”
 

 We find no irregularity in the manner in which the notice was given.
 

 Counsel contends that Act 251 of 1940 is unconstitutional for the following reasons, viz: First, the title of the Act is deceptive and misleading; Second, the body of the Act goes beyond the scope of its title, and Third, the body of the Act contains matter not indicated by the title.
 

 It is contended that the title of the Act should indicate that the Act authorizes the holder of any of the certificates of indebtedness, after same shall have become past due, to have a receiver appointed for the utility and that the receiver is given' such broad and exclusive powers. Counsel takes the position that in this respect the title is deceptive and misleading and that the Act is- broader than its title.
 

 
 *103
 
 The title of Act 251 reads:
 

 “Authorizing certain municipal corporations to construct, maintain, rehabilitate, extend, enlarge or improve any municipally owned public utility either within or without its boundaries; to unite a non-revenue bearing public utility with one or more revenue bearing public 'utilities to be treated as a unit or one revenue bearing utility; to authorize municipal corporations to issue negotiable certificates of indebtedness upon authorization of a majority of the duly qualified resident electors of such municipalities; to provide for the payment of such certificates of indebtedness and for the pledge of revenues and franchises of said revenue producing public utilities as security therefor; to fix other details pertaining to the authorization, issuance, and payment of such certificates of indebtedness, and to provide the time and manner in which the legality of such certificates of indebtedness and pledges may be contested; to provide for an election to authorize municipal corporations to issue such certificates of indebtedness and to pledge the revenues therefrom and franchises thereof.”
 

 That part of Sections 4 and 7 upon which counsel bases his contentions reads:
 

 “Section 4. * * * In the event of default of payment of principal or interest of the certificates or coupons any holder thereof shall have a preferential right of action to enforce by suit, action, mandamus, receivership, or other proceedings to protect and enforce the lien hereby conferred and he may put such proceedings in force and compel performance of all obligations required to be performed by the governing authority of the municipal corporation by the provisions of this Act and the proceedings authorizing the issuance of the certificates of indebtedness.
 

 “Should a receiver be appointed, he is hereby vested with an exclusive permit and franchise to maintain and operate the property and by all means to continue to supply to the public the commodities, products, or services theretofore supplied by the utility with such rights, powers, and privileges as may theretofore have been enjoyed by the municipal corporation in the operation- of said utility. The franchise herein granted shall continue for such period not exceeding twenty years from the date of the receivership as may be fixed in the proceedings authorizing the certificates and shall not be subject to any statutory limitations pertaining to the granting of municipal franchises, not especially contained in this Act, and such receivership shall expire upon the payment in full of the certificates and coupons.
 

 “Section 7. The governing authority of the municipal corporation or any duly appointed or qualified receiver shall have the exclusive authority to fix or supervise the making of such fees and charges.”
 

 Counsel in his argument and in his brief does not contend that the method and means of carrying into effect the main object and purpose of the Act need be stated in the title as a general rule, but takes the position that when the means and method
 
 *104
 
 of carrying out the purpose of the Act are so far reaching, unusual and extraordinary as authorizing the appointment of a receiver with such broad powers that some mention or indication should be given in the title to that effect. •
 

 In the case of McCann v. Mayor and Councilmen of Morgan City, 1932, 173 La. 1063, 139 So. 481, an Act of the Legislature was attacked as being unconstitutional on the ground that the body of the Act provided for foreclosure proceedings against the utility which was not reflected in its title, it was stated in effect that one of the main objects of the Act was a mortgage and pledge of the properties and revenues of the utility and that the provisions of the Act relative to the enforcement of these rights were merely a means of carrying into effect the main object and purpose of the Act which may be omitted from its title. The pledge of the revenues and franchises of the utility are the exclusive securities for the payment,of the certificates and without some provision providing a means for the operation of the franchise it is very doubtful, in case of default on the certificates, that the certificates would be saleable. It is indicated in the title that the revenues and franchises of the public utility may be pledged to secure the certificates. It is also indicated in the title that the details are fixed pertaining to the payment of the certificates. The authorization of the appointment of a receiver as a means of carrying into effect the enforced payment of the certificates, in event of default, is not unusual when the security to the certificates is a lien on the revenues and franchises of the utility. However, if it were not the ordinary method used to enforce the payment of the certificates and there was no law to prohibit it, the Legislature might devise any reasonable means to enforce the pledge that it might deem fit and the method and means to carry it into effect may be omitted from the title.
 

 Counsel contends that Act 251 is unconstitutional for the reason that it goes beyond the scope of Article 14, Section 14, subsection “m” of the Constitution of 1921. Counsel takes the position that the provision of the Constitution relied upon is in the nature of a limitation and authorizes the Legislature to permit municipalities to borrow money upon the1 security of the physical properties and pledge of revenues and income of a municipally owned revenue producing public utility. Counsel argues that the authority granted to the Legislature connects the physical properties with the income and revenue and that the Legislature was without authority to separate the physical properties from the revenue or to permit a municipality to borrow money on the faith of either. Counsel states that the provision in the Constitution relied upon is the exclusive method by which municipal corporations may improve their public utilities and that an Act of the Legislature which does not provide for a mortgage upon the physical properties is unconstitutional.
 

 The Legislature under our law is empowered to pass any law not prohibited by the Federal and State Constitutions.
 

 
 *105
 
 From a reading of this Section of the Constitution it appears that it was intended merely as a special provision for the floating of bonds for the purpose of raising revenues to extend and improve revenue producing public utilities and not as a general limitation upon the action of the Legislature in the future. It merely provides one method by which the utilities may be improved, but does not indicate that this is the exclusive method.
 

 Moreover, if the authority for Act 251 of 1940 must be derived from this Section of the Constitution -the Act is not inconsistent with it. The Act follows the Article of the Constitution except part of the security is omitted and certificates are to be issued rather than bonds. If the Legislature wishes to limit the amount of the security and provide for a pledge of the revenues without a mortgage on' the properties it would not violate the Constitutional provision. The only persons that could be affected would be the holders of the certificates and they are making no complaint. The Act would not be unconstitutional because it does not impose the greatest burden provided for in the Constitution. The greater includes the lesser and the securities involved herein are within the constitutional provision.
 

 Counsel contends that the ordinance or resolution of February 11, 1941, is ultra vires for the reason that the Act does not authorize a municipal corporation to segregate the revenues of one part of a public owned utility from the other revenues of the same utility and to issue certificates of indebtedness against the part segregated.
 

 It is suggested that the record shows the light plant and water plant are operated as one plant. If the water plant and the light plant were operated separately, working independently of each other, it might well be contended that” the city could not pledge the revenues and franchise of one plant for the purpose of securing funds to improve the other. No such question is presented. Conceding the plants are operated as one plant, the pledge of a part of its revenues and franchises appertaining to the light system would not conflict with the provisions of the Act. In fact, the greatest burden made possible by the Act would not necessarily have to be imposed. Any lesser burden imposed within the provisions of the Act could not be said to conflict with the Act. The greater includes the lesser.
 

 Counsel contends that Act 251 is unconstitutional in so far as the receivership of a municipal corporation^ its agencies and properties are concerned and on the further ground that it violates Section 4 of Article 4 of the Federal Constitution. The plaintiff did not raise these questions' in his petition and no special plea to that effect was made.
 

 This Court will not consider a constitutional question unless it has been raised by the pleadings. State v. Ross, 144 La. 898, 81 So. 386. All laws are presumed to be constitutional until • the contrary is made clearly to appear and he who urges the unconstitutionality must specially plead
 
 *106
 
 its unconstitutionality. Milton v. Lincoln Parish School Board, 152 La. 761, 94 So. 386; City of Shreveport v. Pedro, 170 La. 351, 127 So. 865; Ward v. Leche, 189 La. 113, 179 So. 52.
 

 For the reasons assigned the judgment is affirmed at appellant’s cost.