PONDER, Justice.
 

 In this suit, the plaintiff, O. Dolan Ricks, a resident and taxpayer of East Baton Rouge Parish, Louisiana, attacks the constitutionality of Acts Nos. 47 and 48 of 1940. In the alternative, in event that Acts Nos. 47 and 48' are held not violative of the Constitution, he attacks the resolution of the Board of Liquidation of the State Debt, adopted August 26, 1941, as being violative of the Constitution. In the further alternative, in event the acts and the resolution complained of are held not violative of the Constitution, he attacks the validity of the resolution of the Board of Liquidation of the State Debt complained of and Act No.' 35 of 1918 on various other grounds. , He seeks to enjoin any further withdrawal from the State Treasury of the unexpended balance of $270,000 borrowed under a resolution of the Board of Liquidation of the State Debt, wherein a loan of $540,000 was provided and authorized for the Department of Finance. The defendants, Martin L. Close, Director of Finance, the Department of Finance, L. B. Baynard, State Auditor, and Andrew P. Tugwell, State Treasurer, interposed exceptions of vagueness, immateriality, no cause and no right of action. The exceptions were overruled in the trial court. Upon hearing of the rule nisi, the trial judge granted the plaintiff a preliminary injunction, prohibiting the Director of Finance and the Board of Finance from issuing any warrants or orders for the withdrawal from the State Treasury of any further part of the unexpended $270,000, already borrowed under the resolution of the Board of.Liquidation of the State Debt, adopted August 26, 1941, wherein a loan of $540,000 was. provided and authorized for the Department of Finance, and from expending any part of the loan for any purpose whatsoever; prohibiting the State Auditor from issuing, warrants or signing any check on any of the funds involved herein; and enjoining and prohibiting the State Treasurer from honoring or paying any warrant drawn thereon by the Director of Finance, the Board of Finance, the Department of Finance or 'the State Auditor, upon the plaintiff’s furnishing bond in the sum of $250. Upon application to this court, the defendants were granted a suspensive appeal. The matter has now been submitted for our determination.
 

 Counsel for the defendant does not point out in his brief or in his argument in what manner the plaintiff’s petition is vague. We have examined the petition and have arrived at the conclusion that there is no merit in this exception.
 

 The exception of immateriality appears to be leveled at the many allegations in the plaintiff’s petition to the effect that certain provisions contained in acts Nos. 47 and 48 of 1940 are violative of certain sections of the State and Federal Constitutions. We see no merit in the exception for the reason that laws are presumed to be constitutional until the contrary is
 
 *247
 
 made to appear, and the one who urges the unconstitutionality of a law must not only specially plead its unconstitutionality but must show specifically wherein it is unconstitutional. City of Shreveport v. Pedro, 170 La. 351, 127 So. 865; State v. Hudson, 162 La. 543, 110 So. 749; Ward v. Leche, 189 La. 113, 179 So. 52; Pugh et al. v. Police Jury of Livingston Parish, 196 La. 1025, 200 So. 450.
 

 The defendants’ exceptions of no cause and no right of action are leveled at the right of the plaintiff, a taxpayer, to maintain an action to enjoin State officials from expending public funds under color of authority of alleged unconstitutional statutes. No purpose could be gained by reviewing the various arguments advanced by counsel for defendants to the effect that the plaintiff was without right to maintain the present action. The right of a taxpayer to maintain an action of the nature involved herein is no longer open to dispute. Graham v. Jones, 198 La. 507, 3 So. 2d 761; Stewart v. Stanley, 199 La. 146, 5 So.2d 531.
 

 Counsel for the plaintiff contends that Acts Nos. 47 and 48 of 1940 are unconstitutional. Counsel, among other grounds, takes the position that Acts Nos. 47 and 48 are so interwoven with and dependent upon Act No. 384 of 1940, that when Act No. 384 was declared unconstitutional in the case of Graham v. Jones, 198 La. 507, 3 So.2d 761, both of the acts were stricken with nullity. The argument is advanced that it would be impossible to separate the valid from the invalid parts of these statutes without destroying the intention manifested by the Legislature in passing the-acts.
 

 Act No. 384 of 1940 was a joint resolution adopted by the Legislature, proposing to amend the Constitution of this State in a number of important particulars. The resolution was submitted and adopted at an election held on November 5, 1940, as Proposed Constitutional Amendment No. 3 or Act No. 384 of 1940. In the case of Graham v. Jones, supra, Act No. 384 of 1940 was held unconstitutional.
 

 From a mere reading of Acts Nos. 384, 47, and 48 of 1940, all passed at the same-session of the Legislature, it is apparent that they are interrelated, interwoven and designed to -form a comprehensive scheme-for the reorganization of the Executive Branch of the State Government and to-establish a unified financial system of administration. Act No. 384 of 1940 not only proposed certain amendments to the Constitution of this State relative to the form of organization of the Executive Department and a unified system of financial administration, but also outlined the plans-by which these purposes were to be accomplished. It was pointed out in our opinion in the case of Graham v. Jones, supra, that the proposed amendment, Act No. 384, purported to change six articles of the Constitution by repealing twenty sections, amending and rewriting eight sections and adding seventeen new sections. Among the changes in the Constitutin'"! sought to be made were the amendment of Article V of the Constitution, Sections 1, 18, and 20, and the addition of nine new sections to be known as Sections 22-30, in-
 
 *249
 
 elusive. These proposed changes in the Constitution would have entirely recasted the set-up of the Executive Department. Under the Constitution of 1921, the Executive Department consisted of the Governor, the Lieutenant Governor, Auditor, Treasurer, Secretary of State, Register of Land Office, Commissioner of Agriculture and Immigration, and the Commissioner of Conservation. Under the proposed changes in the Constitution, the Executive Department was to consist of the Governor and the Office of the Governor, not to exceed twenty administrative departments, and three independent establishments, all of which together was to be known as the Administrative Service. See Act No. 384, Section 3(a), amending Section 1 of Article V of the Constitution. In one of the new sections, Section 22, proposed to be added to Article V of the Constitution under Act No. 384, Section 3(d), the aforementioned administrative departments were to be: Department of Revenue; Department of the Treasury; Department of Finance; Department of State; Department of Education; Department of Occupational Standards; Department of State Lands; Department of Agriculture; Department of Labor; Department of Banking; Department of Public Service; Department of Public Welfare; Department of Institutions; Department of Health; Department of Public Safety; Department of Highways; Department of Public Works; Department of Conservation; Department of Minerals; Department of Military Affairs. Without going into the other changes sought to be made in the Constitution to bring about the reorganization of the Executive Department, it is sufficient to say that, when Act No. 384 was declared void, the plan to reorganize this department necessarily fell.
 

 Act No. 47 of 1940 purports to reorganize the Executive Department in accordance with the plan outlined in the proposed amendment, Act No. 384 of 1940. Without going into a lengthy discussion of this act, we will point out some of the material provisions showing that it follows the plan outlined in the proposed amendment. It is provided in Title II, Section 1, that the Administrative Service of the Executive Branch of the State Government shall comprise the Governor, the Governor’s Office, and the administrative departments and independent establishments provided for in the Act. Title III of the Act creates the same twenty administrative departments outlined in the proposed amendment, Act No. 384, Section 3(d). Section 1(c) of Title II of Act No. 47 provides that the Administrative Service, above referred to, shall exercise all of the administrative functions, and that no other agency shall exercise these functions. All of the other provisions of the Act, with reference to the Administrative Service, merely set up the manner and method of performing these services.
 

 In our opinion, the Act .follows the general scheme outlined in the proposed amendment. It cannot be disputed that Act No. 47 cannot stand in its entirety in the absence of the proposed changes in the Constitution. From a mere reading of the Act, it is apparent that it is predicated upon the changes sought to be made in the
 
 *251
 
 Constitution. Throughout the Act, the proposed changes in the Constitution are contemplated. It would be impossible to segregate any part of the Act that might be valid without entirely rewriting the statute. Separate articles, sections or paragraphs could not be deleted, for the reason that the valid and invalid parts are so inextricably interwoven. Moreover, if it were possible to segregate the valid from the unconstitutional parts of the statute, the intention for which the Act was passed would not be carried out, viz., the reorganization of the Executive Branch of the State Government. We do not believe that the framers of the Act contemplated a partial reorganization of this department of the government but intended to reorganize it in its entirety.
 

 The following pertinent statement is made in Ruling Case Law, Vol. 6, Par. 125, P. 127: “Invalidity of Essential Part of Statute. * * * The Courts have frequently had occasion to decide that unconstitutional portions of general statutes are of sufficient importance to render the entire act unconstitutional. It may therefore be stated, as an additional test for determining whether the provisions of a statute are severable, that whenever the ruling feature of. a law, or an essential part from which the remaining portions take their cast, is unconstitutional, the act must fall as a whole. This test is distinct from that which demonstrates the invalidity of an entire statute whenever its inducement is Unconstitutional. It is clear that the invalidity of one section of a statute which is in material relation to its other portions so as to modify, restrict, or extend its application, will cause the failure of such other portions also. Frequently a single part of an act may be of so great importance that, although in itself it may not be an inducing cause for the enactment of the legislation, its invalidity may render the whole act void.”
 

 “It is well settled that a statute may be valid in part and' invalid in part, and that, the invalid part may be disregarded altogether and the other part constitute a yalid statute, if the two parts are not so intimately connected as to raise the presumption that the Legislature would not have enacted the one without the other. State v. Cognevich, 124 La. 414, 50 So. 439; 26 A. & E. E. 595.” City of Alexandria v. Hall, 171 La. 595, 131 So. 722, 724.
 

 “It is a fundamental principle that a statute may be constitutional in one part and unconstitutional in another part and that if the invalid part is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected. * * * The natural, corollary to the rule is as firmly affixed in the field of constitutional law as the rule itself. It is to the effect that where it is not possible to separate that part of an act which is unconstitutional from the rest of the act, the whole statute falls.” 11 Am.Jurisprudence, Section 152, Pages 834, 837. Also see, Airey v. Tugwell, 197 La. 982, 3 So.2d 99, 104; State ex rel. Chess & Wymond Co. of Louisiana v. Grace, 188 La. 129, 175 So. 825; State v. Clinton, 28 La.Ann. 201.
 

 “ * * * The whole statute will be declared. invalid where the constitutional and
 
 *253
 
 unconstitutional provisions are so connected and interdependent in subject matter, meaning, and purpose as to preclude the presumption that the legislature would have passed the one without the other but, on the contrary, justify the conclusion that the' legislature intended them as a whole and would not have enacted a part only. In other words, the whole act will be declared invalid where the unconstitutional part is so connected with the remainder or with the general scheme, that it cannot be stricken out without making the legislative intent ineffective, or is of such import that, without it, the other parts would cause results not contemplated or desired by the legislature, or is the consideration and inducement of the whole act * * 57 Corpus Juris, Section 206, Page 644.
 

 “If the different parts ‘are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected must fall with them/ * * * ‘It is undoubtedly true that there may be cases where one part of a statute may be enforced, as constitutional, and another be declared inoperative and void, because unconstitutional; but these are cases where the parts are so distinctly separable that each can stand alone, and where the court is able to see, and to declare, that the intention of the legislature was that the part pronounced valid should be enforceable, even though the other part should fail. To hold otherwise would be to substitute for the law intended by the legislature one they may never have been willing, by itself, to enact/ ” Pollock v. Farmers’ Loan & Trust Company, 158 U.S. 601, 15 S.Ct. 912, 920, 39 L.Ed. 1108, 1124, quoting from Warren v. Mayor and Aldermen of Charlestown, 2 Gray, Mass., 84, and Poindexter v. Greenhow, 114 U.S. 270, 304, 330, 5 S.Ct. 903, 962, 29 L.Ed. 185, 207.
 

 “It is true that a statute bad in part is not necessarily void in its entirety. A provision within the legislative power may be allowed to stand if it is separable from the bad. But no provision, however unobjectionable in itself, can stand unless it appears both that, standing alone, the provision can be given legal effect and that the Legislature intended the unobjectionable provision to stand in case other provisions held bad should fall. Dorchy v. [State of] Kansas, 264 U.S. 286, 288, 290, 44 S.Ct. 323, 68 L.Ed. 686.” Lynch v. United States, 292 U.S. 571, 586, 54 S.Ct. 840, 846, 78 L. Ed. 1434.
 

 From our examination of Act No. 48 of 1940, we find that Section 2 of Title IX creates the Department of Finance as outlined in Title VI of Act No. 47 of 1940. The first section, Section 1 under Title IX of Act No. 48, “Organization For Financial Administration,” reads as follows: “Effect of Title: This title is made a part of this Act for the purpose of providing the necessary organization for giving effect to the substantive and procedural pro
 
 *255
 
 visions of the other titles of the Act. If and when a department of finance, a treasury department, and an office of auditor of State are provided by any other act relating to the general organization of the State government the provisions of this title shall cease to be of any force or effect.” The side note of Section 1 of Title IX reads as follows: “Provisions of this Title of no force or effect, in view of passage and approval of Act 47 of 1940, containing .similar provisions.” This, in our opinion, shows that the provisions of this Title, organizing the Financial Administration and creating the Department of Finance, are of no force and effect in view of the passage and approval of Act No. 47 of 1940, which contains similar provisions. As pointed out heretofore in our discussion of Act No. 47 of 1940, the Department of Finance was one of the administrative departments sought to be created by the proposed constitutional amendment, Act No. 384, under Section 3(d). Both Acts Nos. 47 and 48, with reference to the creation of the Department of Finance as one of the administrative departments of the Office of the Governor, are entirely dependent on the -constitutional changes sought to be made in the reorganization of the Executive Department by the proposed Constitutional Amendment, Act No. 384, as set forth in Section 3(a) thereof, amending Section 1 ■of Article V of the Constitution, and Section 3(d), adding Section 22 to Article V of the Constitution. Throughout Act No. 48 of 1940, it will be seen that the unified financial system contemplates the constitutional changes sought to be made by Act No. 384. Illustrations of this fact are the provisions in Title IX under the following sections, viz., Section 4, “Transfers of Functions;” Section 9, “Department of the Treasury;” Section 12, “Office of the Auditor of State Created as Agency of the Legislative Department;” . Section 20, “Transfer of Employees;” and Section 21, ‘“Transfer of Appropriations.”
 

 As previously stated in this opinion, Acts Nos. 47, 48, and 384 of 1940 were all passed at the same session of the Legislature and were a part of the plan to reorganize the Executive Department and to establish a unified system of financial administration. The reorganization of the Executive Department and the establishment of a unified system of financial administration are dependent upon the changes sought to be made in the Constitution by Act No. 384 and are framed in compliance with the proposed changes in the Constitution. The acts as well as the proposed amendment are inextricably interwoven, interrelated and dependent upon each other.
 

 Under the provisions of Act No. 48, the financial administration is to be administered by the Department of Finance, as one of the administrative departments of the Office of Governor. As pointed out in this opinion, the Department .of Finance, as so constituted, is entirely dependent on the changes sought to be made in the proposed amendment, Act No. 384. The provisions in Acts Nos. 47 and 48, creating the Department of Finance as an administrative department of the Office of Governor, are violative of Section 1 of Article V of the Constitution. Almost all of the other
 
 *257
 
 provisions of Act No. 48 deal with the manner and system of administration. There is no provision in either of the acts for the administration of the financial affairs of the State by any agency other than the one provided for therein. In fact, from a reading of Section 1(c) of Title II of Act No. 47 and Title IX of Act No. 48, the conclusion is inescapable that all other agencies are precluded from administering the financial affairs of the State. Without going into the various other provisions of the Act that might be violative of the Constitution, it is sufficient to say' that the Department of Finance, as so created, cannot be upheld, and since all other agencies are prohibited from administering the financial affairs of the State, Act No. 48 is without effect.
 

 Having arrived at the conclusion that ■Acts Nos. 47 and 48 of 1940 are violative of the Constitution, it is unnecessary to pass on the various other contentions advanced by the plaintiff in this case.
 

 For the reasons assigned, the judgment is affirmed.
 

 O’NIELL, C. J., concurs in the decree and hands down reasons.