Dear Representative Carrier:
You inform us that Senate Bill 290 (Act 577) and House Bill 135 (Act 1032) of the 1993 Regular Session of the Louisiana Legislature each provide for a preference in governmental procurement for Louisiana products but, before final adoption, were amended to exclude fire fighting and rescue equipment from the preference. You further inform us that the practical effect of the amended language is to exclude from preference the only Louisiana company which manufactures fire trucks and equipment, and you request our opinion as to the legality of this legislation with respect thereto.
Acts 577 (SB 290) and 1032 (HB 135) of the 1993 Regular Session are essentially similar. As you have accurately described to us, both Acts direct governmental purchasing officials to give certain preferences to certain Louisiana products under certain conditions when selecting sources (vendors) and their bids or other appropriate proposals received in response to notices that governmental entities would like to purchase or otherwise obtain certain goods. However, as you have also correctly indicated, both Acts provide in identical language:
 "I. The provisions of this Section shall not apply to the procurement or purchase of fire fighting or rescue equipment."
See R.S. 38:2251(I).
We can draw no hard conclusions about the wisdom of the policy decision to exclude fire fighting and rescue equipment from the list of goods which, if they are produced in Louisiana, are to receive preference in governmental purchasing. That policy decision was made by the legislature, and the only question of legality is whether the legislature validly possessed the power to make such a decision as it did within this legislation.
Too often, the most fundamental realities underlying government procurement are overlooked or misunderstood. Government procurement is not an area wherein governmental entities are exercising their governmental function proper — viz., regulating the governed — but rather wherein they themselves are acting in a proprietary capacity, much like a private consumer, in attempting to determine their own needs and to decide what goods and services would be wasteful for them to buy, what goods and services they need to buy, and from whom, at what price, and under what terms and conditions to buy them. The Supreme Court of the United States of America, for example, once explained:
 "Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases."
Perkins v. Lukens Steel Co., 310 U.S. 113, 127, 60 S.Ct. 869,876, 84 L.Ed. 1108 (1940). See also U.S. v. N.O.P.S.I.,553 F.2d 459, 469 (U.S. App. 5th Cir. 1977) and Crown Zellerbach Corp. v. Marshall, 441 F. Supp. 1110, 1118 and 1121 (USDC, E.D., La. 1977).
Procurement laws derive from the realities that government is divided into three branches, that the executive branch is necessarily the one to "execute" (shop around, negotiate, formulate, enter into, fulfill, and seek enforcement of) the contracts of government and necessarily has and exercises personal discretion in doing so, that government contracts involve public (taxpayers') funds and are subject to the public interest, and that the legislative branch of government, consisting of the people's elected policy-making representatives, is constitutionally empowered to make laws in the public interest and to protect the public fisc. Thus, governmental procurement laws are enacted by the legislative branch in order to provide guidelines and procedures to executive branch agencies and officials in the purchasing of goods and services by and for the government, to delimit the amount of discretion of such agencies and officials in this activity, and to provide criteria and standards to be used in the exercise of that discretion, all for the protection of the public interest and the public fisc.
 "Acting through its agents as it must of necessity, the Government may for the purpose of keeping its own house in order lay down guide posts by which its agents are to proceed in the procurement of supplies and which create duties to the Government alone. It has done so in the Public Contracts Act. That Act does not depart from but instead embodies the traditional principle of leaving purchases necessary to the operation of our Government to administration by the executive branch of Government, with adequate range of discretion free from vexatious and dilatory restraints at the suits of prospective or potential sellers."
Perkins v. Lukens Steel Co., supra, 310 U.S. at 127,60 S.Ct. at 876-877.
 "Section 3709 of the [United States'] Revised Statutes requires for the Government's benefit that its contracts be made after public advertising. It was not enacted for the protection of sellers and confers no enforceable rights upon prospective bidders. `The United States needs the protection of publicity, form, regularity of returns and affidavit (Rev. Stat. §§ 3709, 3718-3724, 3745-3747 [34 U.S.C.A. §§ 561-563, 570, 572-574, 41 U.S.C.A. §§ 5, 17-19]), in order to prevent possible frauds upon it by officers. A private person needs no such protection against a written undertaking signed by himself. The duty is imposed upon the officers of the government, not upon him'. That duty is owing to the Government and to no one else."
Id., 310 U.S. at 126, 60 S.Ct. at 876.
[Of course, a legislative branch of government can create laws which grant, under certain conditions, certain rights to private bidders and contractors to protest decisions of executive branch agencies and officials in governmental purchasing activities and even to bring judicial actions against them. The Louisiana legislature has done so, for example, in R.S. 39:1671
et seq. However, the purpose of such laws is to encourage, by private action, enforcement of the guidelines and limitations that the legislature has imposed upon executive branch agencies and officials in order to protect the public. In these instances, the rights of action (that is, the protectable interests) granted to the private bidders and contractors align with and coincidentally protect the public interest as defined in the criteria and procedures of the legislation. Protection of the public interest and public fisc is still supreme, and a private bidder or contractor should not be allowed to pervert such a statutory right of action into one for his private advantage in derogation of the public interest or public fisc, as when, for example, he himself participated in collusion, illegality, or violation of law, obtained an award through a bid which "deviate[d] substantially from the bid proposal," Bilongo v. Dept. of Health and Human Resources, 428 So.2d 1021, 1022
(La.App. 1st Cir. 1983), or otherwise entered into a contract or bid-and-award process that he knew or, per R.C.C. art. 5, should have known was in derogation of statutes "founded on public policy and enacted for the protection of the taxpayers," Boxwell v. Dept. of Hwys., 203 La. 760, 14 So.2d 627, 633 (La. 1943). See also 72 C.J.S., "Public Contracts" § 19, at pp. 197-198.]
These are the fundamental realities underlying governmental purchasing generally. Such also describes the true purpose of the laws enacted by the legislature which provide the criteria and procedures to be used in governmental purchasing — viz., to protect the public interest by preserving the integrity of actions by governmental fiduciaries charged with a public trust in the management and expenditure of public assets, Art. VII, § 14 La. Const'n (1974), whether they are public assets managed by executive branch agents or public assets managed by agents of political subdivisions, which are divisions of the state sharing the state's power to govern insofar as they are "authorized by law to perform governmental functions," Art. VI, § 44(2), La. Const'n (1974).
Against this general background, the legal principle governing the question raised by your request can be readily seen. It is the basic rule that the law-making power of the state legislature is plenary and is limited only by specific state or federal constitutional provisions to the contrary. Art. III, § 1, of La. Const'n (1974); Aguillard v. Treen, 440 So.2d 704
(La. 1983); State v. Swift, 342 So.2d 191 (La. 1977); Crain v. State, 23 So.2d 336 (La.App. 1st Cir. 1945); Stovall v. City of Monroe, 199 La. 195, 5 So.2d 547 (La. 1942); Ward v. Leche,189 La. 113, 179 So. 52 (La. 1938); and State v. Toon, 172 La. 631,135 So. 7 (La. 1931). A state statute cannot be declared invalid for being opposed to the spirit of the constitution or for being harsh, unreasonable, unjust, inexpedient, or unwise; the only ground for declaring a statute invalid is repugnancy to a specific constitutional provision. Ward v. Leche, supra.
Under this principle, we can only conclude that the legislation excluding the fire fighting and rescue equipment from the preferences given to certain other Louisiana products in governmental purchasing is legal and valid. It is within the legislature's power to do so.
It is true that the U.S. Supreme Court applied the Equal Protection Clause of the U.S. Constitution'sFourteenth Amendment to a governmental procurement policy in City of Richmond v. J.A. Croson Co., 488 U.S. 469, 109 S.Ct. 706,102 L.Ed.2d 854 (1989), where the procurement policy — a requirement that the prime bidder/contractor subcontract a fixed percentage of the work to minority-owned businesses — was found to effect invidious discrimination based on race. However, nothing like that situation is involved here. Indeed, removing the fire fighting and rescue equipment from the Louisiana-product preference places the purchasing of such equipment on an equal footing: All vendors of such equipment, wherever produced, have an equal opportunity to bid and be awarded the contract based on being the lowest responsible bidder.
The statutory preference for Louisiana products appears to allow the award to go to the local-product vendor even if his bid is as much as five percent above the otherwise lowest bid of a foreign-product vendor. [One justification for such a preference might be to encourage reinvestment of tax monies in the local economy in order to support and maintain the tax base from which these taxes are collected.] Because of such a percentage increase in the formula for preferring Louisiana products, some local volunteer fire districts might not be able to afford the higher costs that such a preference for fire fighting and rescue equipment might bring. Consequently, the action of the legislature in excluding such equipment from the preference would appear to be reasonably related to another governmental interest of great import — public safety.
Trusting this opinion has fully answered your request, we remain, with warmest regards,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: THOMAS S. HALLIGAN Assistant Attorney General
RPI/TSH/bb 0872f